## C. C. JANNIN v. THE STATE.

No. 1912. Decided January 21, 1899.

Motion for Rehearing Decided April 17, 1901.

**1. Railroad Ticket—Sale of by One Not an Agent of the Company—Constitutional Law.**

The Act of the Twenty-third Legislature, making it a penal offense for any other person than the agent of a railroad company to sell passenger tickets, is constitutional, and within the province of the police power of the State. Such regulation does not create a monopoly. The ticket of a railroad company is not property in the general acceptance of the term, and said act does not deprive the citizen of his property without due course of law, inasmuch as it provides that he can have his money paid for the ticket refunded when the ticket is unused, either in whole or in part, by calling upon an agent of the company.

**2. Same.**

By the Act of the Twenty-third Legislature, making it a penal offense for any other person than the agent of a railroad company to sell passenger tickets, it is expressly "provided, that the provisions of this act shall not apply to any person holding a ticket, upon which is not plainly printed that it is a penal offense for him or her to sell, barter or transfer said ticket for a consideration." Held, because the Legislature thus left it optional with the railroad companies, whether or not they would, in the issuance of their tickets, so create a penal offense, the said act is without authority of law; is violative of law in that it does not define with certainty an offense, and does not create, but delegates its authority to another agency to make the sale of railroad tickets a violation of law; and

is in derogation of the twenty-eighth section of the Bill of Rights, which declares that no power of suspending the laws in this State shall be exercised except by the Legislature. See this proposition discussed in extenso, and upheld in Judge Henderson's opinion on the motion for rehearing.

APPEAL from the District Court of Bexar. Tried below before Hon. T. F. SHIELDS, Special Judge.

Appeal from a conviction for selling a railroad passenger ticket without authority to sell the same as agent for the railroad company; penalty, a fine of $5.

The matters of fact charged in the indictment were proven, and the only question in the case is the constitutionality of the law upon which the indictment is based. The law which was passed by the Twenty-third Legislature, creating the offense, is as follows:

"Section 1. That it shall be the duty of all railroad companies doing business in this State, or the receiver of any such railroad company, through their duly authorized officers, to provide each agent who may be authorized to sell tickets or other evidences entitling the holder to travel upon any such railroad with a certificate setting forth the authority of such agent to make such sale. Such certificate shall be duly attested by the corporate seal of such railroad company, or the signature of the receiver, if any there be, of such railroad company, or by the signature of the officer whose name is signed upon the ticket or coupons which such agents may be authorized to sell.

"Sec. 2. That it shall not be lawful for any person not possessed of such authority to sell, barter or transfer, for any consideration whatever, the whole or any part of any ticket or tickets, passes or other evidences of the holder's right to travel on any railroad within this State.

"Sec. 3. That any person or persons violating the provisions of the second section of this act shall be deemed guilty of a misdemeanor, and upon conviction shall be punished by a fine not exceeding five hundred dollars ($500); and every such sale shall constitute a separate offense. Provided, that the provisions of this section shall not apply to any person holding a ticket upon which there is not a notice, plainly printed, that it is a penal offense for him or her to sell, barter or transfer, said ticket for a consideration.

"Sec. 6. That it shall be the duty of the railway company to print conspicuously across the face of every ticket sold by its duly authorized agents in this State a notice to the holder thereof that it is a penal offense for him to sell, barter or transfer said ticket for a consideration, and that this ticket, or any unused part thereof, is redeemable by the company or its receiver at any ticket office of the company, when presented for redemption."

*R. L. Summerlin* and *Ed Haltom,* for appellant.—(1) The law prohibiting the sale of "tickets" by persons not having a certificate of authority to sell is not a police regulation adopted by the Legislature in the legitimate exercise of the police power. (2) The law is invalid

in this, it delegates to railway companies the power to make the sale of tickets lawful or unlawful. (3) A railway transportation ticket is property. And the law is unconstitutional, because it punishes the citizen for disposing of his lawfully acquired property for a consideration.

This law does not prohibit ticket brokerage, nor is it aimed at "scalpers." It declares it to be a crime for any person not authorized by the railway company to sell for a consideration a ticket. "The law is invalid in this, it delegates to railway companies the power to make the sale of tickets lawful or unlawful." We submit the following:

The law does not propose to punish for the sale of a railway ticket but says if a railway company chooses it may make the sale of a ticket issued by it a violation of the law. How? By having their tickets printed with a notice that it is a penal offense for the holder to sell, etc. The printing of this notice is not mandatory, it is optional with the company, or officer of the company issuing the ticket. And thus the company may determine whether the sale shall be lawful or unlawful, thus authorizing an individual, corporation or company, to enact or put in force the criminal laws of the State at pleasure. The ticket, after being sold, is not a thing or property of the company issuing it. The company's tickets are sold by it, and the ticket is merely the evidence of a right of transportation over the line of a common carrier, a thing that can not be denied to any citizen who is willing to pay the price.

The legislative act now in question has not for its purpose the protection of the public, for the public could not be injured by a person selling for value a ticket he had honestly acquired. "The law is invalid in this, it delegates to railway companies the power to make the sale of tickets lawful or unlawful." We submit the following:

The law stands thus: The railway company may issue its certificate of right of transportation which in the absence of a printed notice may be sold without offense, and on the same day and at the same time may issue another ticket which may not be sold without a violation of the law, so that it is left with the railway company to say whether or not an act, innocent in itself, shall be a violation of the law. Railway v. Todd, 15 S. W. Rep., 56.

A railway transportation ticket is property, and a law which punishes the citizen for disposing of his lawfully acquired property for a consideration is unconstitutional.

That the forgery of a railway ticket is a crime is settled. Overly v. State, 31 S. W. Rep., 377. That the theft of a railway ticket is a crime can not be questioned. "Property" is not only the res but is also the use and rights of the owner in relation to it.

Anything that is tangible and that may pass from hand to hand, or that secures the right or use, is property. There is property in the paper, and a property right in that which the words printed on the paper purport to give, that is, transportation to the holder of the ticket. Now a person owning a railway ticket owns it for all purposes. He may use it to pay for transportation according to its stipulations or he may

throw it in the fire. Now the right of transfer or sale is as valuable as the right to use. If it can be shown that a railway transportation ticket is in itself of such nature that its sale by any other than a railway ticket agent will or may injuriously affect the public, then the legislation in question should be upheld by the courts. But in the absence of such effect or probable effect on the public the courts must decide in favor of the right of the citizen to do with his own as he pleases. If this law prohibited the business of selling of tickets as an occupation, it might be upheld, but even this is questionable. Tiedeman, L. P. P., sec. 102, pp. 292, 293.

A railway transportation ticket has an "ascertainable value" within the meaning of article 732, Penal Code.

Now to say that one is the owner of a property or thing and then to say that he shall not use it, is to deprive him of his ownership or property, and likewise it is the same to say that a person owns a thing of value, and that he shall not part with it for a consideration, except to a certain person. The assignability of a transportation ticket is not in question. Railway companies or other common carriers may issue tickets binding upon them to carry the holder of the ticket whoever he may be, and again they may issue tickets which may be special contracts giving no rights to any person except the original purchaser.

A party acquiring a ticket issued to another upon special contract can not force the company issuing it to recognize it in the hand of any except the original purchaser; and a law prohibiting the attempted sales of tickets of this class might be upheld. But our statute goes too far, it covers every right of transportation, and declares no matter how innocent a transaction, the sale of the transportation ticket shall be punished as an offense.

The ticket is the title to transportation, and where a person buys a ticket and it is lost, the party can not insist upon transportaion. He lost his property and he must suffer the loss. 25 Am. and Eng. Enc. of Law, 1076. So that it is something more than a voucher or token. It is, and can be, nothing but a property subject to all the incidents of ownership. It is something more than a promissory note, for a note though lost or destroyed may be collected.

"Property is anything that has an exchangeable value." 16 Wall., 127. An attribute of property is "the exclusive right of using and disposing of a thing as one's own." 1 Bouv. Law Dict., 138. "Free use, enjoyment and disposal." 1 Black Com., 138. "The power of inalienation is a necessary incident to the right." 2 Kent, Com., 310.

The case of Burdick v. People, 149 Illinois, page 600, is based upon the falacious idea that because "the Constitution does not say that the disposition of property may not be limited or regulated," the Legislature has the power to say to whom an owner of property shall sell.

It is not denied in the opinion that the purchaser of a railroad ticket owns it as his property, but it virtually says the organic law has not said that no law shall be passed punishing a citizen for selling his prop-

erty, therefore the Legislature may pass a law punishing a citizen for disposing of his property for a consideration. And it further expresses the idea .that the Legislature may deprive a citizen of his property by passing a law for that purpose, which doctrine has been condemned by the following cases: Wynehamer v. People, 13 New York, 398; Hoke v. Henderson, 4 Dev., page 15.

It was never unlawful so that it could be punished as a crime, to sell or assign a chose in action, and the rights of an assignee were enforced by bringing suit in the name of the assignor, who had no interest in or control over the case. Tiedeman, Com. P., sec. 24, p. 397. And the crime of selling for value a chose in action, railway tickets, is a new offense.

"The ordinary railway ticket, issued without limitations or restrictions, is transferable, passing by delivery, and the holder is entitled to ride upon it." Hutchinson, Car., 2 ed., sec. 580d; Corston v. Railway, 44 Minn., 454, 45 Minn., 53.

*Upson, Bergstrom & Newton, W. W. Walling,* and *Mann Trice,* Assistant Attorney-General, for the State.—Railroad tickets containing no stipulation or condition restricting their assignability may be assigned, but it is within the province of the Legislature to take from it by statute the negotiable character' with which the common law has endowed it. The police regulation of employment may extend to any limit that may be necessary for the prevention and suppression of fraud. The existence of fraud and the machinery to be employed to accomplish its suppression are matters which rest with the Legislature to determine. In the exercise of its police power it is entirely competent for the Legislature to declare railway tickets non-negotiable, for it is a familiar and elementary principle that the Legislature may exercise police powers over all property or any business affected with public interest. Cooley, Const., Lim., p. 734, 5 ed.; Commonwealth v. Wilson, 14 Phila., 384; Fry v. State, 63 Ind., 560; Burdick v. People, 149 Ill., 600; State v. Corbett, 59 N. W. Rep., 317; State v. Bernheim, 49 Pac. Rep., 441.

The act is not in conflict with and in violation of sections 3 and 27, article 1, of the Constitution of Texas, in that it gives the railroad companies or receivers thereof the exclusive privilege of designating and selecting persons who shall have the power to sell and transfer railroad tickets in this State and establish a monopoly in said business of selling railroad tickets, or in that it is an attempt to confer upon the railroad companies or the receivers thereof the licensing power of the State, because the act does not empower the railroad companies to designate any person or confer upon any person the privilege of buying and selling railroad tickets. It simply requires the railroad company to provide its agents with a certificate of authority to sell its tickets only, and such authority does not confer upon such persons the right to buy the tickets of such railway company, or to buy, sell, or barter the tickets of any other railway company.

The act complained of is not a delegation by the State to railway companies of its power to enforce the penal laws of the State against the sale and barter of railway tickets by unlicensed agents.

. The act is not contrary to the second clause, first section, Fourteenth Amendment to the Constitution of the United States, and is not contrary to section 19, article 1, of the Constitution of the State of Texas, as an attempt to abridge the citizen's privilege and deprive him of his property without due process of law, because a railroad ticket is not property in the strict sense of the word, but only an evidence of the holder's right to travel on such ticket, and under the act he is simply prevented from assigning that contract to another, but he is enabled to recover for such ticket immediately the first cost. Munn v. People, 69 Ill., 80, 94 U. S., 113; Thompson on Car. of Pass., 65; Angel on Car., 5 ed., sec. 609; Logan v. Railway, 12 Am. and Eng. Ry. Cas., 41; 2 Beach, Railways, sec. 869; Railway v. Daniels, 29 S. W. Rep., 427; 4 Elliot, Railroads, secs. 1593, 1594; 4 Interstate Commerce Com. Rep., 392; Mauritz v. Railway, 23 Fed. Rep., 769; Lewis v. Sleeping Car Co., 143 Mass., 272; Frank v. Ingalls, 41 Ohio St., 563; Logan v. Railway, 77 Mo., 66; Dietrich v. Railway, 71 Pa. St., 435; Elmore v. Sands, 54 N. Y., 515.

*Baker, Botts, Baker & Lovett* filed an able and elaborate brief on the motion for rehearing.—We submit that this court not only has the right, but that it is its duty, should it be of the opinion that the terms of the statute in question are in any measure ambiguous, or the meaning obscure, to look to the history of the times to ascertain the conditions existing when the law was conceived, and the reasons which prompted its being brought forth; to refer to the history of the bill, and trace its progress as it developed and ripened into a law during its pendency before the Legislature, as evidenced by the legislative journals—and in the light of these data, bearing in mind the evil sought to be remedied and the end sought to be gained, and bearing in mind that it is the duty of the court to, if possible, so construe an act of the Legislature as to uphold it—give to the act that broad meaning that will accomplish the legislative purpose, and yet not be repugnant to any provision of the State or Federal Constitution. See Railway v. Interstate Commerce Commission, 162 U. S., 197; United States v. Railway, 57 Fed. Rep., 426; United States v. Railway, 91 U. S., 79; United States v. Wilson, 58 Fed. Rep., 768; Railway v. Oden, 53 Texas, 343; Black, Interp. of Laws, rule 27, p. 36, rule 91, pp. 224-226; 2 Greenl., Ev., sec. 491; South., Stat. Const., sec. 30; 5 Am. and Eng. Enc. of Law, pp. 335-338.

. This court, following the great weight of authority construing similar statutes in other States, has rejected the contention urged by the appellant that a railroad ticket is property in the common acceptation of that term, and that therefore this law sought to punish a citizen for disposing of his lawfully acquired property for a consideration, and hence was void. This is the ground upon which similar statutes have, as a rule,

been challenged. The view as expressed by this court on this branch of the case is sustained by a recent decision of the Supreme Court of California. Ex Parte Lorenzer, 61 Pac. Rep., p. 68. This court also, following the great weight of authority, holds that the act in question is a legitimate exercise by the State of its police powers, and has further repudiated the idea that a railroad company can not by law be given the exclusive authority to conduct its own business.

The sole question therefore left in this case, and the point upon which this court, in its original opinion, held the law unconstitutional and void, is that, because the act is made to apply only to tickets upon which it is plainly printed that it is a penal offense to sell, barter or transfer same for a consideration, this delegates to the railroad companies of the State the legislative power of suspending laws by declining to print such a clause upon tickets issued by them. We shall therefore direct our attention solely to this branch of the case.

Under the perfected bill, as finally enacted into a law, it is only made unlawful for persons other than authorized agents of railroad companies to sell a particular class of railroad tickets, to wit, tickets upon which the prescribed notice is conspicuously printed. As was said in the case of Insurance Co. v. Swigert, 154 Illinois, 63: "It is competent for the Legislature to pass a law, the ultimate operation of which may, by its own terms, be made to depend upon some contingency, as upon the affirmative vote by the electors of a given district, or upon any other indifferent contingency the Legislature in its wisdom may prescribe. Where the contingency, upon which the ultimate operation of a law is made to depend, consists of a vote of the people, or the action of some foreign deliberative or legislative body, as is the case here, it is erroneous to suppose the Legislature, in such cases, abandons its own legislative functions or delegates its power to the people in one case, or to such foreign deliberative or legislative body in the other. In either case the law is complete when it comes from the hand of the Legislature. * * * Nothing is better settled than that the operation and even remedial character of a perfect and complete law may, by virtue of limitations contained in the law itself, based upon contingent extrinsic matters, be enlarged, diminished, or wholly defeated."

To the same effect see Insurance Co. v. Welsch, 29 Kansas, 672; also the well considered case of People v. Fire Association of Philadelphia, 92 New York, 311, where the rule is clearly announced that a law may be made to depend upon some contingency, certain or uncertain, for its operation, and that all that is required is that it be a complete law when it leaves the hands of the Legislature.

To the same effect see Johnson v. Martin, 75 Texas, 33; San Antonio v. Jones, 28 Texas, 32. In Locke's Appeal, 72 Pennsylvania State, 491, it was held that the statute there challenged was complete in itself, although its operation was contingent upon the happening of subsequent events; that the Legislature fixed and prescribed the contingency, the happening of which was necessary in order to set the law in motion, and

when that contingency happened (the vote of the people of a certain locality) "it was the fiat of the law and not their votes which commanded licenses to be issued or not to be issued." See also the strong case of State v. McMahon, by the Supreme Court of Minnesota, 68 N. W. Rep., 77.

(They also cited, in support of this contention, Debardelaben v. State, 42 Southwestern Reporter, 684; People v. Japinga, 73 Northwestern Reporter, 111; In re Kollock, 165 United States, 526; State v. Myers, 42 West Virginia, 822; Weideman v. State, 56 Northwestern Reporter, 688.)

The penal offense is created by the statute, not by the railroad company in printing the prescribed notice on tickets, as held by this court. The operation of the statute is made to depend upon the contingency of the railroads printing or not such notice on tickets. Two classes of tickets are recognized by the statutes upon which it operates. The railroads may create the tickets, and have it within their power perhaps (if we assume that they will openly persist in the violation of a positive law) to determine to which class the tickets so created by them shall belong; but they can not create the offense, and as soon as the tickets are issued the law operates upon them with certainty, according to the class to which they may belong. The railroads do not "create a penal offense," but they create the subject matter upon which the law operates, and the violation of the clear and certain terms of the statute operating upon such subject matter is the legislative created offense.

The Legislature made it the duty of railroads to print the prescribed notice upon all tickets sold in this State. But, says this court, "it is merely made a duty which they may comply with or not as they see fit." But suppose a penalty had been attached for a violation of this duty, would this have changed the nature of the offense created by the law so far as concerns individuals dealing in tickets? Clearly not. A railroad might see fit to violate the law and incur the penalty, yet the law would operate upon the tickets so issued just as it now does where no penalty is prescribed. But, says this court, the statute, leaving it within the power of the railroads to print or not to print the notices, as they may elect, is "violative of section 28 of our Bill of Rights, which says: 'No power of suspending laws in this State shall be exercised except by the Legislature.'" If the railroads should violate the law, and fail to print the prescribed notices on tickets issued by them, they would no more suspend the law than they would should they refrain from issuing any tickets at all. There is no law or regulation requiring or compelling railroads to issue tickets to take the place of cash fares. If they should elect to destroy all their tickets and issue no more, then there would clearly be no subject matter for this statute to operate on. So, if they should issue no tickets belonging to that class which the statute makes it penal for the general public to traffic in, no subject matter would exist for such statute to operate on; but the law would remain unsuspended, and the penal offense created by the law unchanged. Carried to

its logical conclusion, the rule announced in the original opinion of this court, applied to some of our other penal statutes, would result in this wise: The statute making it an offense to allow a minor to enter a saloon is unconstitutional, because it gives to the saloonmen of the State the power of suspending a law by going out of business. The statute denouncing a penalty against the unlawful carrying of arms is unconstitutional, because the manufacturers may suspend this law by failing to make any such arms as are mentioned in the statute; or, because the general public have it within their power to suspend the law by every man becoming a policeman or militiaman in actual service, or joining some other of the classes excepted from the operation of the statute. The policeman who may lawfully carry arms has it within his power to resign, when he can not lawfully carry arms. Ergo, if he resigns and continues to carry arms, he usurps a legislative function and creates a penal offense, and hence the law operating upon him in his changed condition is void. And so on at infinitum—argumentum ad absurdum.

HENDERSON, JUDGE.—Appellant was convicted of selling a railroad ticket, not being the agent of any railroad company and authorized thereto, under the Act of the Twenty-third Legislature, page 97, and his punishment assessed at a fine of $5, and appeals.

The indictment sets out by exhibit the ticket alleged to have been sold, which is as follows:

"Issued by Galveston, Harrisburg & San Antonio Ry. Co. Excursion Ticket 5-4, good for one first-class passage San Antonio to Houston (Depot). This ticket is not good for stop-over privileges, and will not be honored for any part of the trip after midnight of May 7, 1894.

"Notice.—It is a penal offense for the purchaser or holder of this ticket to sell, barter, or transfer the same for a consideration, and this ticket or any unused part thereof is redeemable by the company at any ticket office of the company when presented for redemption within ten days after the right to use the same has expired by limitation of time as stipulated herein.

"One way rate, $6.30.
"Round Trip Rate, $—.
                           "Form S. B.
                               "L. J. PARKS, Ass't G. P. & T. A."

It is alleged substantially that appellant without lawful authority sold said railroad ticket to one E. A. Metcalfe, he, the said Jannin, not being the agent of the said Galveston, Harrisburg & San Antonio Railway Company for the purpose of selling tickets, and having no certificate of authority to make the sale of the same, etc. No objection was urged to the indictment, but it is insisted that the law of the Twenty-third Legislature making it a penal offense for any other person than the agent of a railroad company to sell passage tickets is unconstitu-

tional, (1) because the law prohibiting the selling of tickets by persons not having a certificate of authority to sell is not a police regulation adopted by the Legislature in the legitimate exercise of the police power; (2) the law is invalid in this, it delegates to railway companies the power to make the sale of tickets lawful or unlawful; (3) railroad transportation ticket is property.

In this connection appellant contends that said act is violative of section 19 of the Bill of Rights, as follows: "No citizen of this State shall be deprived of life, liberty, property, immunities, * * * except by the due course of the law of the land." "Sec. 26. Perpetuities and monopolies are contrary to the genius of a free government, and shall never be allowed." These questions have all been so thoroughly discussed under similar laws of other States that it would appear to be a work of supererogation to reiterate what other courts have said on this subject; and in the face of a number of able decisions of other States, we would not undertake to add anything new to the discussion of the questions here involved. See Commonwealth v. Wilson, 14 Phila., 384; Fry v. State, 63 Ind., 560; Burdick v. People, 149 Ill., 600; State v. Corbett, 57 Minn., 345; State v. Bernheim, 49 Pac. Rep., (Mont.), 441; People ex rel. Tyroller v. Warden State Prison, App. Div. Sup. Ct. New York, 26 Hun, 228, and the same case reported in Court of Appeals of New York, 51 N. E. Rep., 1006. By reference to the above cases it will be seen that this constitutional question with reference to scalpers' tickets in one shape or another has been before the courts of the several States mentioned, and the holding was in favor of the constitutionality of the law in all of said States except New York. In Tyroller's case, from that State, it was held on a proceeding in habeas corpus to the appellate division of the Supreme Court, by a unanimous court, that the scalpers'. law of that State was constitutional, in that it did not deprive a citizen of his property without due course of the law of the land, nor did it confer an exclusive privilege upon any class of persons so as to be a monopoly; and it was within the police power of the State Legislature to pass such a law. It was moreover held that it was not violative of any provision of the Constitution or laws of the United States with reference to interstate commerce. This case was taken to the Court of Appeals of said State, and there, by a divided court of four to three, the law was held to be unconstitutional. In that case the learned chief justice appears to consider that the passage ticket of a railway company is property, and any law which attempts to restrain or inhibit the disposition and sale of same is pro tanto a violation of the Constitution, which provides that no person shall be deprived of life, liberty, or property without due process of law. Again, that opinion holds that the attempt of the Legislature to confine the sale of railroad passage tickets to the agents named in the act was the creation of a monopoly, and that the legislation in question inhibited by said provisions of the Constitution of New York did not come within the police power of the Legislature. A number of cases are cited in favor of the opinion. It will be observed. how-

ever, that there is a marked distinction between the New York law and our statute on this subject, in that the New York statute, by the construction placed on it by Judge Parker, authorized not only the agents of the particular corporation to make sales of such tickets, but the agents of all other transportation companies; and in the opinion the learned judge lays stress on this construction of the statute, as class legislation and creating a monopoly. As stated before, the opinion of the New York Court of Appeals on this subject runs counter to all of the authorities that have come under our observation. That court itself was divided on the subject, and in our opinion the very able discussion by Judge Parker is more than answered by the dissenting opinions of Justices Bartlett and Martin. These treat a passage ticket on a railroad company not as property in its general sense, but as a token of the purchaser's right to be transported on the railroad between the points named in the ticket. We quote as follows: "The ticket is the property of the railroad company, and is a part of the means by which it conducts its business. It is delivered to the passenger to be held by him temporarily for a special purpose, and he, to that extent, acquires a special property in it. When the journey is ended, or about to end, it is to be delivered to the conductor. It serves a threefold purpose: It is evidence in the passenger's hands that he has paid his fare, and has a right within the cars; it insures the payment of the passage money by all who take seats; and when it is redelivered to the company it becomes a voucher in its hands against the office or agent who issued it in the adjustment of its accounts. It thus appears that the original and legitimate function of the ticket is to carry out a transaction between the carrier and the passenger—the ticket being the property of the carrier; still the passenger is entitled to retain it in his possession until the completion of his journey." And again: "Railroad and steamboat tickets can in no proper sense be regarded as property in which third persons have any vested interest. They are mere tokens or evidences of a right to transportation, in which event the traveler, who has purchased one, has but a special interest, and to which the companies have title, and the ultimate right of possession." They hold, in accordance with the views of other courts, that the act of the Legislature restricting the right of sale to the agents prescribed in the act was within the police power of the State, and not violative of any provision of the Constitution; that in the exercise of its police power the State was authorized to prevent the pursuit of the occupation of ticket brokers upon the ground that it was harmful to the public, and the difficulty in circumventing the fraud was so great that no other efficient means could be found.

We hold, in accordance with what we conceive to be the current of authority, and the sounder view on this subject, that the Legislature was authorized, as was done in this act, to confine the sale of passage tickets on railroad companies to the agents of such companies, and to make it penal for any other person to make a sale of same. The ticket of a railroad company is not property in the general acceptation of the

term, but the purchaser has only a special property in the ticket as evidencing his right to passage on the road; that common carriers within this State are peculiarly subject to regulation; and to preserve and protect both the passenger and the company itself against fraud, is within the province of the police power of the State, and not violative of any provisions of the Constitution. Nor can it be said that such regulation is any wise the creation of a monopoly. Unlike the New York statute, our act confines the sale of passage tickets to the agents of the railroad company itself, and does not authorize the agents of other companies to make the sale of the same (unless such agents be also the agents of the company in question). This is simply authorizing the railroad company to conduct its own business. And again, it can not be urged that the act in question deprives the citizen of his property without due course of law. It does not seek to confiscate his property. It says to the citizen, if he desires to be transported on any railroad, he can go to one of the agents and buy a ticket for that purpose, and pursue his journey. If from any cause he should fail to pursue his journey in whole or in part, it authorizes him to call on an agent of the company and have his money refunded. It occurs to us as absurd to say that a regulation of this character can not be adopted, both on behalf of the railroad companies and of the general public, under the police power of the State, without violating some sacred provision of the Constitution.

However, appellant raises what we consider a more serious question. He contends that the act leaves it optional with railroad companies as to whether or not they will make the sale of passage tickets a penal offense, inasmuch as it is left optional with each railroad company in the sale of tickets whether or not they will indorse on same the following provisions of the act: "Provided, that the provisions of this act shall not apply to any person holding a ticket upon which is not plainly printed that it is a penal offense for him or her to sell, barter, or transfer said ticket for a consideration." In reply to this it is urged that the act makes it the duty of each railroad company to print said proviso conspicuously across the face of every ticket sold by its duly authorized agent. While it is true the act in this section requires this, yet is it a sufficient answer to the proposition that it is still optional with the railroad company to make the sale of passage tickets a penal offense? It will be observed that no penalty is attached to the failure of the railroad company to print across the face of its ticket said proviso. It is merely made a duty, which they may comply with or not as they see fit. It would have been a very easy matter for the Legislature to have confined the sale of all passage tickets to the agents of the railroad companies, without any requirements as to the form of the ticket. But this course was not pursued. As it is, every railroad company has the option to issue a passage ticket with this proviso or not as it may see proper. If it issues a ticket without this proviso, it is not a penal offense; and in every such case scalpers and all others may deal in such passage tickets without any violation of the law. We accordingly hold

that because the Legislature left it optional with the railroad companies whether or not in the issuance of tickets they would create a penal offense, that the act of the Legislature is without authority of law; is violative of the law in that it does not define with certainty an offense; does not itself create an offense, but delegates its authority to another agency to make the sale of railroad tickets a violation of the law. In this respect it would appear to be violative of section 28 of our Bill of Rights, which says, "No power of suspending laws in this State shall be exercised, except by the Legislature." See Suth. Stat. Con., sec. 69. We therefore hold that the sale of railroad passage ticket in this case is not a violation of law.

The judgment is reversed and the prosecution ordered dismissed.

*Reversed and dismissed.*

BROOKS, Judge, dissents from the conclusion reached by the majority of the court.

### ON MOTION FOR REHEARING.

HENDERSON, JUDGE.—It is strongly insisted that the court erred in its original opinion in holding that the act in question delegated the power to railroad companies to make the traffic in passage tickets a penal offense as they might see proper, in that it is contended that, although it may be optional with railroad companies to make the indorsement on passage tickets which is provided by law and make traffic in the same a penal offense, yet this would not be such delegation of legislative power as would render the act invalid. In this connection we are furnished with the history of the passage of the act, and that it was recognized that a certain class of tickets, though for passage in this State, being sold abroad, could not be reached here. If we were willing to concede that proposition, still it would not follow, if the act gives authority to railroad companies to legislate as to the character of ticket which it is unlawful to traffic in, that it would not be void because the Legislature had some other object in view. We are cited to a number of cases on this subject, but none of them, we take it, are decisive of the question here presented. The oleomargarine cases referred to prohibit the sale of all oleomargarine packages, except marked as required by law. While it is true oleomargarine was thus divided into two classes, that which was unmarked and that which was marked, none could be sold unless it was marked. That is, oleomargarine could not be an article of commerce—could not be used for sale, unless packages were marked as required. Not so with the railroad tickets under this act. They could be used for passage whether marked or not, whether indorsed or not; but the person who trafficked in the ticket indorsed as provided by law could be punished, while one who had purchased a ticket which was not indorsed and paid for it the same money as the other, could not be punished.

In Debardelaben's case (Tennessee), 42 Southwestern Reporter, 684,

cited by counsel, there was nothing remaining to be done by any other person to make the act effective, except betting on horse-races. Persons were only authorized to bet on the same on a certain character of race course, and no others; and this applied to all alike. The case of Field v. Clark, 143 United States, 649, though not cited in the brief of counsel, is more in point as supporting his contention. In that case the act, which authorized the President to decide when certain foreign countries discriminated against the United States as to imports, and in such case to change the duties on certain imported articles from such countries or to suspend their free introduction, was held to be constitutional, as not transferring the legislative power to the President. That case, however, was not by a full court; and in our opinion, the dissenting views of Chief Justice Fuller and Justice Lamar announce the correct doctrine. In O'Neal v. Insurance Co., 166 Pennsylvania State, 72, 45 American State Reports, 650, it was held that the statute providing for a uniform contract or policy of fire insurance to be made and issued by all insurance companies taking fire risks on property within the State, directing the insurance commissioners to prescribe a standard policy of insurance and forbid the use of any other, is unconstitutional as an unauthorized delegation of legislative power. The doctrine there announced is to the effect that the law must be complete in all its terms and provisions when it leaves the legislative branch of the government. We take it that the law here involved leaves it optional with railroad companies as to whether or not they will adopt a certain character of tickets. If they do adopt the prescribed form, they constitute a penal offense against anyone who deals in that character of tickets; while if they exercise their option and leave off the indorsement, it is not a penal offense to deal in such tickets. In the original opinion we upheld the law as within the province of the police power of the State, in that it was a regulation to preserve and protect both the passenger and the company itself against fraud and imposition. But if it is left to railroad companies to issue their passage tickets, some with and some without the indorsment which constitutes a traffic in such tickets a penal offense, then the very safeguard intended for the protection of the public against fraud is broken down and rendered nugatory by the option bestowed on the railroad companies. To guarantee the protection intended, the law must be uniform in its operation; and to authorize railroad companies to make a certain character of ticket a penal offense, it occurs to us is a delegation of an unauthorized legislative authority. The motion for rehearing is overruled.

*Motion overruled.*

BROOKS, Judge, absent.