JOHNSON v. ELLIOTT, Tax Collector, et al.
(No. 1333.)

(Court of Civil Appeals of Texas. Texarkana.
May 21, 1914.)

1. CONSTITUTIONAL LAW (§ 60*) — LEGISLATIVE POWERS—DELEGATION.

Rev. St. 1911, art. 7476, levies a state tax on sellers of nonintoxicating malt liquors of $2,000, and authorizes counties, incorporated cities, and towns to levy an additional tax not exceeding $1,000 on such persons. Section 7477 requires persons engaged in the business to apply for a license and pay the taxes prescribed. *Held*, that Pen. Code 1911, art. 496, defining a disorderly house as any house situated in territory where the sale of intoxicating liquors is prohibited where nonintoxicating malt liquors, requiring an internal revenue license, are sold or kept for sale, was not invalid as delegating to Congress the power of determining whether the business of selling nonintoxicating malt liquors shall be valid, and as conferring on another jurisdiction power to suspend a state law; since, if Congress should exempt sellers of nonintoxicating malt liquors from the internal revenue requirement, a person prosecuting such business in prohibition territory where the sale of intoxicating liquors is prohibited would owe his immunity from punishment, not to the suspension of the state law, but to the fact that he was not keeping a disorderly house under the conditions prescribed by the Penal Code.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 89, 90, 93; Dec. Dig. § 60.*]

2. CRIMINAL LAW (§ 13*)—OFFENSES—DEFINITION.

Pen. Code 1911, art. 496, declaring that a house located in a district where the sale of intoxicating liquors is prohibited in which nonintoxicants, for the lawful sale of which an internal revenue license is required, are sold or kept for sale shall constitute a disorderly house, was not objectionable for uncertainty in referring to the laws of Congress to determine the conditions under which it should be applicable.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 13, 14; Dec. Dig. § 13.*

For other definitions, see Words and Phrases, vol. 3, pp. 2108–2110.]

3. INTOXICATING LIQUORS (§ 45*)—WRONGFUL SALE—STATUTES.

Pen. Code 1911, art. 496, providing that a house located in a prohibition district, in which nonintoxicating malt liquor is sold or kept for sale, requiring the seller to have an internal revenue license, shall be a disorderly house, should be construed as constituting a special exception to Rev. Civ. St. 1911, arts. 7476, 7477, providing for the licensing of persons to sell nonintoxicating malt liquors, with reference to particular territory, and was therefore not in conflict with such sections.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. § 47; Dec. Dig. § 45.*]

4. INTOXICATING LIQUORS (§ 15*)—NONINTOXICANTS—SALE—REGULATION—"POLICE POWER."

Pen. Code 1911, art. 496, including in the definition of a disorderly house a place in prohibition territory where nonintoxicating malt liquors, requiring a United States retail liquor dealer's license are sold or kept for sale was a proper exercise of the state's "police power," which includes authority to restrict the pursuit of any business or occupation injurious to the health, peace, security, morals, or general welfare of society.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. §§ 17, 18; Dec. Dig. § 15.*

For other definitions, see Words and Phrases, vol. 6, pp. 5424–5438; vol. 8, p. 7756.]

5. CONSTITUTIONAL LAW (§ 47*) — POLICE POWER.

To justify the courts in holding that a statute is an unwarranted invasion of the fundamental rights of the citizen, and therefore beyond the state's police power, the objection must appear from the face of the act itself or from facts of which the court must take judicial notice.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 43–45; Dec. Dig. § 47.*]

6. EVIDENCE (§ 20*)—JUDICIAL NOTICE—POLICE POWER — SALE OF NONINTOXICATING MALT LIQUORS—REGULATION.

There are no facts of which courts can take judicial notice justifying the conclusion that the business of keeping and selling nonintoxicating malt liquors under a federal license is not calculated to disturb the peace and good order of society, or in some manner to injuriously affect the public welfare so as to preclude a regulation of the business by an exercise of state's police power.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 24; Dec. Dig. § 20.*]

7. MANDAMUS (§ 154*)—OFFICIAL DUTY—PERFORMANCE—PETITION—REQUISITES.

A petition for mandamus to compel performance of an official duty enjoined by law must not only aver every fact essential to show the petitioner's right to the service demanded, but must also negative every other fact which the officer might urge as a legal excuse for not performing such service.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. §§ 296–316; Dec. Dig. § 154.*]

8. MANDAMUS (§ 164*)—ISSUANCE OF WRIT—ALLEGATIONS OF PETITION.

In mandamus proceedings to compel the performance of an official duty, the propriety of issuing the writ must depend on the allegation and proof of facts showing affirmatively the particular circumstances establishing the respondent's obligation to render the service demanded, and not on the officer's failure to set up a valid defense.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. §§ 344–360; Dec. Dig. § 164.*]

9. MANDAMUS (§ 154*) — JURISDICTION — PLEADING.

Rev. St. 1911, art. 7476, levies on all persons, firms, etc., selling nonintoxicating malt liquors an annual state license tax of $2,000, and provides that counties, incorporated cities, and towns where such sales are made may each levy an annual tax not exceeding $1,000 on all such persons. *Held*, that a petition for mandamus against a county tax collector to compel issuance of a nonintoxicating malt liquor license alleging tender of the $2,000 license fee, but containing no allegation of a tender of the local license tax or that the county commissioners had not levied any tax under the act, was fatally defective.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. §§ 296–316; Dec. Dig. § 154.*]

Appeal from District Court, Tarrant County; R. H. Buck, Judge.

Petition for mandamus by Brady Johnson against W. E. Elliott, Tax Collector, and oth-

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes.

ers. From a judgment denying the writ, petitioner appeals. Affirmed.

Freeman & Batsell, of Sherman, Theodore Mack, of Ft. Worth, and Jones & Hassell, of Sherman, for appellant. Jno. W. Baskin, of Ft. Worth, for appellees.

HODGES, J. On October 25, 1913, the appellant filed in the court below his original petition asking for a writ of mandamus against the appellees, alleging, in substance, the following facts: (1) That the plaintiff is a resident of Tarrant county, Tex.; that the defendants Elliott and Beavers were, respectively, the duly elected, qualified, and acting tax collector and county clerk of Tarrant county; (2) that on the 23d of October, 1913, the plaintiff filed with the defendant Beavers, the county clerk, his written application for a license to sell nonintoxicating malt liquors in the unincorporated town of Handley, situated in Tarrant county, describing particularly the place where the business was to be located, and tendered to defendant Elliott in his official capacity the sum of $2,000, being the amount of the annual tax levied by the state of Texas under the provisions of articles 7476 and 7477 of the Revised Civil Statutes and, demanded of the collector an official receipt; (3) that the town of Handley is situated in a justice precinct in Tarrant county in which the sale of intoxicating liquors was then and there prohibited by law. The plaintiff's application and tender were refused by the defendants upon the ground that the business of selling nonintoxicating malt liquors was prohibited by law in the territory designated in the application; that the defendants relied upon the provisions of article 496 of the Penal Code of 1911, which define as a disorderly house any house situated within the territory where the sale of intoxicating liquors was prohibited, where nonintoxicating malt liquors requiring a federal revenue license were sold or kept for the purposes of sale. It is further alleged that the nonintoxicating malt liquors which the plaintiff desired to sell contain only about 1.55 per cent. of alcohol, and are not injurious to the human system. It is admitted that, in order to carry on the contemplated business in accordance with the requirements of the federal statute, an internal revenue license must be procured. The prayer of the petition is for a writ of mandamus compelling the tax collector of Tarrant county to accept the tender of $2,000 offered in payment of the tax levied by the state, and compelling the county clerk to issue the necessary license authorizing the plaintiff to engage in the business of selling nonintoxicating malt liquors at the place described. The court sustained a general demurrer to the petition, and, on the refusal of the plaintiff to amend, dismissed the suit.

The appellant bases his right to the license applied for upon an act of 1909, which is now embraced in articles 7476 and 7477 of the Revised Civil Statutes of 1911. So much of that act as is pertinent is as follows:

"Art. 7476. There is hereby levied upon all firms, persons, associations of persons and corporations, selling non-intoxicating malt liquors, an annual state tax of two thousand dollars. Counties, incorporated cities and towns where such sales are made may each levy an annual tax not exceeding one thousand dollars upon all such persons, firms or corporations.

"Art. 7477. Each person and each firm and each corporation and each association of persons desiring to engage in the business mentioned in the preceding article, before engaging in same, shall file with the county clerk of the county in which the business is proposed to be pursued an application in writing for a license to engage therein and shall state the place or house in which such business is to be pursued, and, if within the corporate limits of any incorporated city or town, that fact shall be stated; and any such person or firm or corporation or association of persons shall pay to the tax collector of the county the entire amount of annual tax levied by the state and the entire amount of the annual tax upon such business as may be levied by the commissioners' court of said county * * *; and all such taxes shall be paid in advance; and no license shall be issued by the county clerk until the person, or firm, or corporation, or association of persons, applying therefor shall exhibit receipts showing the payment of all taxes levied and authorized by this chapter."

The appellees in their brief filed in this court justify the refusal of the money tendered upon the ground that the business for which the license was desired would be unlawful. As supporting that conclusion, they refer to the provision of an act adopted at the special session of the Legislature in 1910, which is now article 496 of the Penal Code of 1911. That article contains the following as a part of a definition of a disorderly house:

"Any house located in any county, justice precinct or other subdivision of a county where the sale of intoxicating liquor has been prohibited under the laws of this state, in which such non-intoxicating malt liquor is sold or kept for the purpose of sale, as requires the seller thereof to obtain internal revenue license under the laws of the United States as a retail malt liquor dealer; or any house located in any county, justice precinct or other subdivision of a county in which the sale of intoxicating liquor has been legally prohibited, where the owner, proprietor or lessee thereof has posted a license issued by the United States of America, authorizing such owner, proprietor or lessee thereof to pursue the occupation and business of a retail liquor dealer, or a retail malt liquor dealer."

Other provisions of the Penal Code prohibit, under a penalty, the running of a disorderly house as defined in the article quoted.

It is conceded by the appellant that in order to lawfully carry on the business which he contemplated—that of selling nonintoxicating malt liquors—he would be compelled to procure an internal revenue license as a retail malt liquor dealer from the federal government. It is also admitted that under the provisions of the Penal Code referred to above the business for which this license was sought is now prohibited.

The validity of that portion of the article quoted which prohibits the sale of, or the keeping for the purposes of sale, nonintoxicating malt liquors is attacked upon four grounds: (1) That the statute, in effect, delegates to Congress the power of determining whether or not the business of selling nonintoxicating malt liquors shall be lawful, and thus confers upon another jurisdiction the power of suspending a law of this state; (2) that in order to ascertain what is prohibited recourse must be had to the laws of another jurisdiction, and the statute is void for uncertainty; (3) that article 496 is, in effect, repealed by the adoption of the Revised Civil Statutes of 1911 licensing the sale of nonintoxicating malt liquors; (4) that the statute undertakes to restrict a species of commerce not within the police powers of the state.

[1] Taking these objections in their order, the first question is: Does this penal statute delegate to Congress the power of suspending a state law relating to a subject exclusively within the jurisdiction of the state Legislature? For many years the federal government has levied and collected a tax on the business or occupation of selling malt liquors. The payment of that tax and the securing of a receipt, or, as it is sometimes called, a license, authorizes the dealer to sell all grades of malt liquors, whether intoxicating or not. It seems to have been the purpose of the Legislature in enacting this penal statute to forbid the prosecution of the business of selling nonintoxicating malt liquors under such conditions in territory where the sale of intoxicating liquors has been prohibited. The fact that the sale of such liquors must be carried on under a governmental permit which authorizes the dealer to sell those which intoxicate, as well as those which do not, is apparently the condition which makes the business offensive to our state law. That fact is more clearly disclosed by the concluding paragraph of the statute quoted above. If Congress should repeal the present laws relating to the sale of malt liquors, or should so modify those laws as to no longer require the possession of a retail malt liquor dealer's license for the lawful pursuit of the business of selling those which are nonintoxicating, then the business in which the appellant wishes to engage would not be a violation of the Texas statute. It is contended that in thus making the criminality of the business dependent upon the status of the law of another jurisdiction, the Legislature has undertaken to surrender to that jurisdiction the power of suspending a state law. That conclusion does not follow when we take into consideration the specific offense which the state law denounces. This statute does not unconditionally forbid the selling of such liquors, or the keeping of them for the purpose of sale, but makes the penalty applicable only when the sale to be lawfully made must be licensed by the federal government. The Legislature doubtless had good reasons for denouncing such commerce when carried on under those conditions. But whatever may have been the legislative inducement, if the enactment of the law was within the state's police powers, it is not void merely because it may be unwise. A penal statute is said to be suspended when its provisions are not enforceable against the specific offense which it describes and aims to suppress. This result is accomplished when the suspending power, acting upon the law itself, withholds its enforceability or annuls its provisions. As long as the statute occupies the status of being enforceable against the particular class of offenses which it describes, when committed, it is in no sense suspended. If Congress should enact a law so that the business of selling nonintoxicating malt liquors might be lawfully pursued without a retail malt liquor dealer's license, a person prosecuting that business in the territory described would owe his immunity from punishment to the fact that he was not keeping a house under the particular conditions denounced, and not to the suspension of the state law. By dispensing with the requirement for a federal license Congress would remove the particular ingredient which makes the business offensive in territory where the sale of intoxicants has been prohibited. The provisions of the statute would still be enforceable against the offense which it denounces, and could not be considered as annulled or suspended.

In support of his proposition appellant refers us to the case of Jannin v. State, 42 Tex. Cr. R. 631, 51 S. W. 1126, 62 S. W. 419, 96 Am. St. Rep. 821. In that case the Court of Criminal Appeals had under consideration an act passed in 1893, which prohibited, under a penalty, any one except a duly authorized agent of a railway company from selling, bartering, or transferring railway transportation tickets. The statute required railway companies to have conspicuously printed across the face of every ticket sold a notice to the holder thereof that it is a penal offense for him to sell, barter or transfer that ticket for any consideration, and that this ticket, or any unused part thereof, was redeemable by the company at any of its offices. A penalty not exceeding $500 was imposed upon any person who violated the act. It was provided, however, that any person holding a ticket upon which was not plainly printed the fact that it was a penal offense for him or her to sell, barter, or transfer the same for a consideration should not be liable to the penalty. A majority of the court held that the law was invalid, upon the ground that it left it optional with the railroad companies whether or not in the issuance of tickets they would create a penal offense; and for the further reason that the law did not itself create the offense and define it with sufficient certainty, but delegated its authority to another agency. It was held that this

act was obnoxious to section 28 of our Bill of Rights, which says: "No power of suspending laws in this state shall be exercised, except by the Legislature." It seems to us that the reasons assigned by the able judge who delivered the opinion in that case are not sufficient to support the conclusions reached; and in a civil proceeding like the present we do not feel bound to follow the precedent, even if it be considered in point. The courts have no right to annul the legislative acts of the people's representatives, except in those instances where the enactments clearly transcend the limits of legislative authority, or are so uncertain that their enforcement is impracticable.

[2] It is also contended that the statute here under consideration is uncertain because it refers to the laws of Congress to determine the conditions which make it applicable. If the Legislature desired to prohibit dealing in nonintoxicating malt liquors only when such business could be lawfully carried on under a federal license permitting the dealer to also sell intoxicating malt liquors, how could the offense be defined in any way? The act is as certain as is practicable, considering what appears to be its real purpose. Congress had a right to impose upon the business of retailing liquors the burdens embraced in the present revenue measures. Those laws are not foreign to the citizens of this state. They constitute a part of the law of the land, and are judicially noticed by our courts.

[3] In the third ground it is contended that there is a conflict between the civil and penal statutes; that under the provisions of articles 7476 and 7477, of the Revised Civil Statutes the state has licensed, and thereby specially authorized, the business of selling nonintoxicating malt liquors, and for that reason the provisions of the Penal Code which seek to prohibit the pursuit of that business are not enforceable. As before stated, the civil statute imposing the tax and requiring a state license for the sale of nonintoxicating malt liquors was adopted at the regular session of the Legislature in 1909. The penal statute was enacted at the special session held in 1910, and is therefore of a later date. In section 16 of the Final Title of the Revised Civil Statutes of 1911 it is expressly stated that:

The "provisions of the Revised Statutes, so far as they are substantially the same as the statutes previously in force, shall be considered as continuations of such statutes, and not as new enactments."

It follows from this that, if there should be any conflict between our civil and the criminal statutes, the latter, being the last enactment, should control to the extent of the conflict. Moreover, the civil statute is general in its terms and applies to the entire state, while the penal statute prohibits the business described in territory where the sale of intoxicating liquors has been prohibited. It may therefore be treated as excepting from the general provisions of the civil statute the particular territory mentioned.

[4] We pass then to the consideration of the appellant's fourth ground—that to prohibit the sale of nonintoxicating malt liquors under the conditions prescribed in the statute is an unwarranted invasion of the absolute rights of the citizen and is beyond the police powers of the state. If the statute is subject to that objection, it is because it denies to the citizen the right to engage in a particular species of commerce. The police power of the state includes the authority to restrict the pursuit of any business or occupation which is injurious to the health, peace, security, or morals of the public, or to the general welfare of society. That the state may, in the exercise of its police power, absolutely prohibit the sale of intoxicating liquors because of the known results which follow that traffic is now universally conceded. Whether or not the business of selling nonintoxicating malt liquors under a federal license which also authorizes the sale of intoxicating malt liquors is a trade which in some way injuriously affects society, is equally a question of fact, and one which must be settled by the Legislature. It must be assumed in construing laws like that here under consideration that the Legislature has made the necessary investigation and has found that the facts warranted the restriction which it imposes. This, of course, does not mean that the Legislature has the authority to arbitrarily prohibit the pursuit of a harmless or useful vocation by merely declaring that it is hurtful to society. It cannot invade the absolute rights of the citizen under the pretense of promoting the public welfare. Like all other legislative authority, this power must be exercised with due regard to constitutional limitations. Under our system of government all legislative enactments are subject to review by the courts.

[5] But to justify the courts in holding that a given act is an unwarranted invasion of the fundamental rights of the citizen, and therefore beyond the police power of the state, that objection must appear from the face of the act itself or from facts of which the courts must take judicial cognizance. Powell v. Pennsylvania, 127 U. S. 678, 8 Sup. Ct. 992, 1257, 32 L. Ed. 253; Helena v. Dwyer, 64 Ark. 424, 42 S. W. 1071, 39 L. R. A. 266, 62 Am. St. Rep. 206. If a proper determination of the question as to whether or not the business is hurtful involves an inquiry into the conditions normally resulting from the traffic, and makes necessary the ascertainment of facts through the medium of evidence in some form, the Legislature has a right to prosecute such an investigation, and its findings are entitled to as much weight as should be attached to the findings of a court.

[6] There are no facts judicially known to the courts which would justify the conclu-

sion that the business of keeping and selling nonintoxicating malt liquors under the federal license before referred to is not calculated to disturb the peace and good order of society, or in some manner injuriously affect the public welfare. It is admitted in the appellant's petition that nonintoxicating malt liquors do contain a small percentage of alcohol. The fact that this beverage is nonintoxicating is not conclusive of the further fact that it is not injurious or does not in some manner result in disturbing the peaceful condition of society. We cannot say, as a matter of law, that one must actually drink malt liquors to a state of intoxication before any of the evil consequences resulting from the use of alcoholic stimulants will follow. It is true the appellant alleges that the drink which he desires and expects to sell is not harmful to the human system; but the validity of the statute is to be determined, not by what the appellant expects to do, but by what he may lawfully do, under his license when granted. Again, we cannot say, as a legal conclusion, that the prosecution of such a business under a federal license which also authorizes the sale of those grades of malt liquors which do intoxicate may not furnish such a tempting opportunity to violate the law against the sale of intoxicants that it would lead to the commission of crime and to that long train of evils which usually attends the saloon traffic. We therefore conclude that the statute under consideration is not subject to any of the objections urged. Powell v. Pennsylvania, supra; Mugler v. Kansas, 123 U. S. 623, 8 Sup. Ct. 273, 31 L. Ed. 205; United States v. Cohn, 2 Ind. T. 474, 52 S. W. 38.

[7] There is still another reason which we think justified the court below in dismissing the application for this writ of mandamus. Such writs are extraordinary remedies, and, when invoked for the purpose of compelling the performance of some official duty enjoined by law, it must clearly appear from the petition that the applicant is entitled to the service which he seeks to have performed. Ry. Co. v. Randolph, 24 Tex. 333; Watkins v. Huff, 63 S. W. 922, and cases there cited. The petition, in order to be free from objection, should not only aver every fact essential to show the right to the service sought, but should also negative every other fact which the officer might urge as a legal excuse for not performing the service demanded. In granting a writ against a public official, seeking to compel the performance of a public duty about which the officer may have no personal concern, the court must be fully advised on the subject.

[8] The propriety of issuing the writ is therefore not to be determined by the defense which the official may interpose, but by the allegation and proof of facts which show affirmatively and clearly that under the particular circumstances he is legally bound to perform the service. The duties of the court would be none the less imperative if the officer failed to set up any defense whatever. It is not a matter which he can waive.

[9] The statute quoted requires the applicant for license to pay $2,000 as the state tax, and such tax not exceeding $1,000 as may be levied by the commissioners' court of any county in which the business is to be carried on. This apparently leaves it optional with the commissioners' court to levy a tax upon such traffic; but, when levied, it is the duty of the tax collector to collect that tax from the applicant before the license can be issued. It will be observed that the appellant's original petition alleges only a tender of the amount of the state tax. It does not aver that the commissioners' court of Tarrant county had not levied any tax under the authority given in the statute. The court must be advised as to that fact before granting the writ. The petition therefore should have stated, if such be the case, that no such tax had been levied by the county. The absence of such averments justified the court in dismissing the petition, even if the penal statute assailed is subject to the objections heretofore discussed.

The judgment of the district court will therefore be affirmed.