## Ex Parte Frank A. Smythe.

### No. 4036. Decided May 12, 1909.

**1.—Wife and Child Abandonment—Constitutional Law.**

The Act of the Thirtieth Legislature, p. 133, providing a penalty for the abandonment of wife or children is unconstitutional and invalid. Ramsey, Judge, dissenting.

**2.—Same—Appropriation—Public Funds.**

The Act of the Thirtieth Legislature, p. 133, which provides that the fine imposed must be paid to the party injured, is a direct appropriation of public funds for private or individual purposes, and contravenes section 6 article 16 of the State Constitution, which inhibits an appropriation for private or individual purposes. Ramsey, Judge, dissenting.

**3.—Same—Suspension of Law.**

The Act of the Thirtieth Legislature, p. 133, which authorizes a county judge to suspend the law, in that he may suspend the punishment, contravenes section 28 article 1 of the State Constitution, which inhibits the suspension of any law except by the Legislature.

**4.—Same—Trial by Jury.**

The Act of the Thirtieth Legislature, p. 133, is unconstitutional in that it deprives the defendant of the right of trial by jury.

**5.—Same—Bond—Jurisdiction—Basis of Prosecution.**

The bond required by said act is not within the jurisdiction of the county court. Besides the basis for the prosecution is not clearly laid down.

Appeal from the Criminal District Court of Harris County. Tried below before the Hon. J. K. P. Gillaspie.

Appeal from a habeas corpus proceeding asking release from a commitment under a violation of the wife-and-child abandonment statute.

The opinion states the case.

*K. C. Barkley,* for relator.—This bill is unconstitutional because it gives the court power to suspend the law. Texas Const., art. I, sec. 28; Burton v. Dupree, 46 S. W. Rep., 272; Jannin v. State, 51 S. W. Rep., 1126; San Antonio & A. P. Ry. Co. v. Lester, 99 Texas, 214; Coombs v. State, 44 S. W. Rep., 854; Curtis v. Gulf, C. & S. F. Ry., 63 S. W. Rep., 149; Sutherland Statutory Constructions, sec. 69. Counsel also cited authorities in the opinion.

*F. J. McCord,* Assistant Attorney-General, for the State.

BROOKS, Judge.—Relator was arrested on a capias issued upon an indictment returned into the Criminal District Court of Harris County, wherein relator was charged, in substance, with unlawfully and wilfully and without cause abandoning his wife. He made application for writ of habeas corpus to Honorable J. K. P. Gillaspie, judge of said court, which, having been refused by him, relator filed his petition in this court seeking release.

We do not deem it necessary to state seriatim the insistences upon

upon which relator predicates his release in this case, but suffice it to say that all of his positions raise the question as to the constitutionality and validity of the abandonment of wife or children statute to be found in the Act of the Thirtieth Legislature, page 133. We hold that said Act is totally invalid. It will be seen, from an inspection of said Act, that after relator is fined under the same, said fine shall be paid into court for the benefit of the wife, or to the guardian or custodian of the minor child or children. Section 6, article 16 of the State Constitution, reads as follows: "No appropriation for private or individual purposes shall be made." Then the article goes on and provides for a regular statement, under oath, and an account of the receipts and expenditures of all public money. The first clause cited of said section is the one that we hold absolutely invalidates the penal clause in the statute under consideration, since it provides that, when the relator is fined, that said fine shall be paid to the wife or the minor child or children. However· beneficent the purpose of this legislation, all of which we readily and cheerfully concede, yet we must hold that no penal statute can be passed in this State, in the light of the provision of the Constitution quoted, which statute permits the fine after collection to be paid to the individual, whoever that individual may be. It clearly follows that, when the fine is imposed, that said fine becomes the money of the State of Texas. Then, for the law to provide that that money must be paid to the party injured by the violation of the law, is a direct appropriation of public funds for private or individual purposes. Suppose the Legislature had provided that, where a man beats another with a stick, or offers him any other unlawful violence other than death, that the fine that should be collected for said unlawful act should be turned over to the victim of said assault. Certainly it could not be insisted that this character of law would not infringe the provision of the Constitution cited. Nor would the fact that the husband is under moral and civil liability to support the wife and child render the act less obnoxious to the provision under consideration. The Constitution of this State does not, nor can it be, bent to meet beneficent purposes, however noble the design may be, because to appropriate this money of the State of Texas to support the wife and child would be equally in violation of the letter and spirit of the law as it would be to appropriate money for any other character of fine to the party who was injured by the violation of the law under which the fine was imposed.

The abandonment statute under consideration further provides, "that before the trial (with the consent of the defendant), or after conviction, instead of imposing the punishment hereinbefore provided, or in addition thereto the court, in its discretion, having regarded the circumstances and financial ability of the defendant, shall have the power to pass an order, which shall be subject to change by it from time to time, as the circumstances may require, directing the defendant to pay a certain sum weekly to the wife, guardian or custodian of the minor

child or children, and to release the defendant from custody, on probation, during the time of the imprisonment upon his entering into a recognizance, with two good and sufficient sureties in double the amount of the fine imposed, payable to the county judge." The condition of the bond, in substance, is that the defendant shall make his personal appearance in court, when ordered to do so by the court, during the suspension of imprisonment or probation, and shall further comply with the terms of the order, then the recognizance shall be void, otherwise in full force and effect. Section 28, article 1, of the State Constitution, provides: "No power of suspending laws in this State shall be exercised except by the Legislature." The clause of the statute under consideration, last cited, clearly authorizes the county judge to suspend the law in that he suspends the punishment. A law without a punishment, especially a penal law, has no validity or force whatever, and when one suspends the penalty he suspends the law. Therefore, we hold that this section of the Act in question violates the section of the Constitution last quoted.

Without passing upon the other questions in the other sections of the act, we will say that the bond authorized to be executed might be two thousand dollars, since the maximum fine could be one thousand dollars. In the light of this suggestion, it occurs to us that, even conceding the validity of the bond, which we do not, it should be made within the jurisdiction of the County Court. Furthermore, this statute is invalid, since it deprives the defendant of the right of trial by jury, which is also guaranteed by the Constitution. The first clause of the Act, in defining the offense, says, "That every person who shall, without *good cause,* abandon his wife, and neglect and refuse to maintain and provide for her," etc. This section of the Act might be upheld on the theory that by the words "good cause" the Legislature intended to say "lawful cause," that is, further to say, those causes enumerated under the divorce law, and hence might be upheld on the theory that the Legislature did not intend to punish the husband for failing to support or for having abandoned the wife, except for those causes expressly decided in the divorce law of this State. If this is the meaning of the Legislature in the Act under consideration, then, if this legislation is reenacted, or similar legislation is passed, the basis for a prosecution should be succinctly and clearly laid down.

Relator is accordingly discharged.

*Relator discharged.*

RAMSEY, JUDGE (dissenting).—Relator was arrested on a capias issued upon an indictment returned into the Criminal District Court of Harris County, wherein relator was charged, in substance, with unlawfully and wilfully and without cause abandoning his wife. He made application for writ of habeas corpus to Honorable J. K. P. Gillaspie, judge of said court, which, having been refused by him, relator filed his petition in this court seeking release.

1. A number of questions are raised on the application, and relator assigns many grounds why his arrest should be held unlawful and his release ordered. Among other things, it is urged that the indictment returned against him is not good, in that it is not averred that he abandoned his wife without *good* cause, but that it is only averred that he unlawfully and wilfully and without cause abandoned his said wife. This matter can not be raised in this proceeding. It is well settled that a writ of habeas corpus is not available to test the sufficiency of a complaint or indictment. See Ex parte Beverly, 34 Texas Crim. Rep., 644; Ex parte Cox, 53 Texas Crim. Rep., 240.

2. The Act under which the indictment was returned is chapter LXII, page 133, of the Acts of the Thirtieth Legislature. Section 1 of this Act, which undertakes to define the offense, is as follows:

"That every person who shall, without good cause, abandon his wife, and neglect and refuse to maintain and provide for her, or any person who shall abandon his or her minor child or children, under the age of twelve years, in destitute or necessitous circumstances, and wilfully neglect or refuse to maintain or provide for such child or children, shall be deemed guilty of a misdemeanor, and on conviction thereof shall be punished by a fine of not less than one hundred dollars nor more than one thousand dollars, or by imprisonment in the county jail, not less than one year nor more than two years, or by both such fine and imprisonment; and should a fine be imposed, it shall be paid into court for the benefit of the wife, or to the guardian or custodian of the minor child or children; provided, that before the trial (with the consent of the defendant), or after conviction, instead of imposing the punishment hereinbefore provided, or in addition thereto the court in its discretion, having regard to the circumstances and financial ability of the defendant, shall have the power to pass an order which shall be subject to change by it from time to time as the circumstances may require, directing the defendant to pay a certain sum weekly to the wife, guardian or custodian of the minor child or children, and to release the defendant from custody, on probation, during the time of the imprisonment upon his entering into a recognizance, with two good and sufficient sureties in double the amount of the fine imposed, payable to the county judge. The conditions of the recognizance shall be such that if the defendant shall make his personal appearance in court whenever ordered to do so by the court during the suspension of imprisonment or probation, and shall further comply with the terms of the order, then the recognizance shall be void, otherwise in full force and effect. If the court be satisfied by information and due proof, under oath, that at any time during the suspension of imprisonment or probation that the defendant has violated the terms of such order, the court may forthwith proceed with the trial of the defendant under the original indictment, or sentence him under the original conviction, as the case may be. In case of forfeiture of recognizance and enforcement thereof by execution, the sum recov-

ered shall be paid to the wife, guardian or custodian of the minor child or children." The grounds urged as reasons for holding this act unconstitutional are as follows:

First: That such act is void because it deprives the defendant of a speedy public trial, and in support of this proposition the following authorities are cited: Texas Constitution, art. 1, sec. 10; Code of Criminal Procedure, art. 4; Waldon v. State, 50 Texas Crim. Rep., 512.

Second: The act is unconstitutional because it gives the court power to suspend the law, and on that question the following authorities are cited: Texas Constitution, art. 1, sec. 28; Burton v. Dupree, 46 S. W. Rep., 272; Jannin v. State, 51 S. W. Rep., 1126; San Antonio & A. P. Ry. Co. v. Lester, 99 Texas, 214; Coombs v. State, 44 S. W. Rep., 854; Curtis v. Gulf, C. & S. F. Ry. Co., 63 S. W. Rep., 149; Sutherland Statutory Constructions, sec. 69.

Third: That the act is unconstitutional in that it deprives defendant, in part, of the right of trial by jury.

Fourth: That such act is unconstitutional because in effect it gives the court the right to imprison for debt.

Fifth: That the act is invalid in that it is void for uncertainty because it defines no offense.

Elaborating these positions somewhat, the argument of appellant is: The Constitution provides that in all criminal prosecutions the accused shall have a speedy public trial, whereas this act undertakes to suspend an indictment over appellant indefinitely, in that it provides that "before the trial, with the consent of the defendant, or after conviction, instead of imposing the punishment hereinbefore provided, or in *addition thereto,* the court in its discretion, having regard to the circumstances and financial ability of the defendant shall have the power to pass an order which shall be subject to change by it from time to time, as the circumstances may require, directing the defendant to pay a certain sum weekly to the wife . . . and to release the defendant from custody on probation." The act also, it is stated, provides for the defendant entering into recognizance, and further states: "The condition of this recognizance shall be such that if the defendant shall make his personal appearance in court whenever ordered to do so by the court during the suspension of imprisonment or probation and shall further comply with the terms of the order, then the recognizance shall be void, otherwise in full force and effect." "If the court be satisfied . . . that at any time during the suspension of imprisonment or probation that the defendant has violated the terms of such order, the court may forthwith proceed with the defendant under the original indictment or sentence him under the original conviction as the case may be." The argument is made that the act is unconstitutional in that it deprives defendant, in part, of the right of trial by jury, and we are reminded that the Texas Constitution, art. 1, sec. 15, provides: "The

right of trial by jury shall remain inviolate," yet this law says: "Instead of imposing the punishment herein provided, or in addition thereto . . . *the court in its discretion* having regard to the circumstances and financial ability of the defendant shall have the power to pass an order which shall be subject to change by it from time to time as the circumstances may require, directing the defendant to pay a certain sum weekly to the wife . . . and to release the defendant from custody on probation." It is urged that the effect of this provision deprives the defendant of the right of trial by jury as to whether he shall pay this sum weekly or monthly to his wife or in lieu thereof go to jail. That this, in effect, gives the court the right to try him and impose this obligation upon him, which is in fact a criminal sentence, without the right of trial by jury.

On the proposition that the act is unconstitutional because in effect it gives the court the right to imprison for debt, we are referred to article 1, section 18, of our Constitution, which provides, "No person shall ever be imprisoned for debt," and yet this law, it is urged, seeks to compel the defendant to pay a certain sum weekly for the support of his wife, and says, in effect, "If you pay this debt we have imposed upon you, you may remain at liberty, but if you fail to pay it, the court will imprison you under the provisions of this act." This, it is urged, in letter and in spirit, is a violation of this safeguard of liberty which is written in every constitution of the English speaking race.

Finally, the argument is made that this act defines no offense, as no person could tell what would constitute "good cause," as named therein, and as the Penal Code, article 3, shows that neither layman nor judge are permitted to go outside of the Penal Code for the definitions of offenses. That it is not the aim of the law to try a man for the violation of a law written nowhere except in the minds of the trial judge or jury. We have thus set out at length the positions of counsel, with a statement of the arguments and reasons, as well as a collection of the authorities which it is contended support them. In addition to the reasons urged by appellant why this law should be held invalid, it is also suggested in the opinion of the majority of the court that it is in contravention of section 6, article 16, of the State Constitution. This entire article is as follows: "No appropriation for private or individual purposes shall be made. A regular statement, under oath, and an account of the receipts and expenditures of all public money shall be published annually in such manner as shall be prescribed by law."

There are a number of these cases pending in this court involving the validity of this statute. For the reason that the question is so clearly presented in the brief filed by relator and inasmuch as the sole question here presented is the constitutionality of this measure, I have deemed it appropriate to write my views in this case, al-

though cases involving the same matter have been pending in this court before this appeal was filed. I shall discuss all the matters urged why the act is unconstitutional though somewhat in the reverse order.

1. It is contended that the act does not define an offense in plain and intelligible language, and therefore is invalid, and relator is entitled to a discharge. If the statement and proposition is correct the result must follow, but I can not accede to the contention that the act does not define an offense and provide an appropriate penalty therefor. The act does provide that every person who shall without good cause abandon his wife and neglect and refuse to maintain and provide for her or any person who shall abandon his or her minor child or children under the age of twelve years, in destitute or necessitous circumstances and wilfully neglect or refuse to maintain or provide for such child or children, shall be deemed guilty of a misdemeanor. This, I think, defines the offense, and such is the uniform holding of all the courts where the question has arisen so far as I have been able to discover. This precise question came before the Supreme Court of Missouri in the case of State v. Davis, 70 Mo., 467. The statute construed in that case is, so far as relates to the definition of the offense, almost a literal copy of our statute. It is as follows: "Every husband shall be deemed guilty of a misdemeanor who shall without good cause abandon his wife and fail and neglect or refuse to maintain and provide for her or who shall without good cause abandon his child or children under the age of twelve years born in lawful wedlock and fail, neglect or refuse to maintain and provide for such child." In discussing the case the court say: "The abandonment of a child is a statutory offense and the language of the statute is sufficient in an indictment to charge the crime. Abandonment does not mean a mere temporary absence from home, or temporary neglect of parental duty. Bouvier defines abandonment thus: 'The act of a husband, or wife, who leaves his or her consort, wilfully and with an intention of causing perpetual separation.' Webster defines it as 'a total desertion; a state of being forsaken.' Additional words in the indictment would have been but definitions of the term 'abandonment,' in words which perhaps would equally require definitions." This act is very similar in many ways to our statute in reference to negligent homicide, which statute has been sustained almost from the foundation of the government. Articles 683, 684, 685, 686 and 687 are as follows:

Article 683: "Homicide by negligence is of two kinds—1. Such as happens in the performance of a lawful act; and, 2. That which occurs in the performance of an unlawful act."

Article 684: "If any person in the performance of a lawful act shall, by negligence and carelessness, cause the death of another, he is guilty of negligent homicide of the first degree."

Article 685: "A 'lawful act' is one not forbidden by the penal law, and which would give no just occasion for a civil action."

Article 686: "To constitute this offense there must be an apparent danger of causing the death of the person killed, or some other."

Article 687: "The want of proper care and caution distinguishes this offense from excusable homicide. The degree of care and caution is such as a man of ordinary prudence would use under like circumstances."

It is true that article 687 undertakes to define what is meant by the degree of care and caution as those words are used in the statute, and it is defined to be such as a man of ordinary prudence would use under like circumstances. But it is not believed that this definition is important as affecting the validity of the statute or more than a declaration of what would be implied in the law in the absence of such a definition. It will thus be seen by an inspection of these acts that negligent homicide of either the first or second degree is not fully defined except such homicide as occurs through negligence of the party charged and as may happen in the performance of a lawful act, or as may occur in the performance of an unlawful act. It is clear that such homicide may occur in any one of a thousand ways and that no man born of woman has written or would ever be able to write in the statute every circumstance or state of case under which a killing might occur. And so in construing this statute the law undertakes to visit punishment upon and create an offense in the act and out of the fact of abandonment of the wife or child without good cause. What is good cause in a case must depend upon the facts and circumstances of each particular case, judged by all the surroundings. It would be impossible in the nature of things to define the offense further, nor do we think it essential to its validity that it should be further defined. The grounds and causes of abandonment, the facts and circumstances surrounding such environments are as various and innumerable as the emotions of men or their shifting environments and as many sided and complex as the shades and shadows of life and as abounding as the "multitudinous laughter of the seas." Again, we think it perhaps correct to say that the statute may be sustained on the proposition and theory suggested by Judge Brooks in the majority opinion, that the term "good cause" is synonymous with the term "lawful cause." If it can in fairness be held that the terms are synonymous, it will not, as I believe, change the rule as to the validity of the statute.

2. Again, I think the statute is not obnoxious to the claim and contention that it warrants an imprisonment for debt. It no more does this than does any other article of our criminal statute, which provides for the confinement of a defendant on conviction in default of the payment of the fine assessed against him. It may be that some features and provisions of the act are not warranted under our Constitution, and that it should be held that it is not competent

to permit the court in its discretion "to pass an order which shall be subject to change by it from time to time as the circumstances may require, directing the defendant to pay a certain sum weekly to the wife, guardian or custodian of the minor child or children, and to release the defendant from custody, on probation." It may be that this provision ought to be held obnoxious to and in contravention of article 1, section 28, of the Constitution, depriving the court of the power to suspend the law, and it may be that this provision is not in consonance with the spirit of article 1, section 18, which provides that the right ‘of trial by jury shall remain inviolate. I am not prepared to agree that the act is in contravention of article 16, section 6, of our Constitution, quoted above. It occurs to me that the intent and purpose of· that provision of the Constitution was to prohibit the Legislature from making appropriations out of funds ·raised by public taxes as gratuitous, to private individuals and was not meant to lay an embargo or inhibition on the disposition to be made of mere penalties for the violations of our criminal law. However, this becomes unimportant for the reason that if the provisions affecting the remedy and enforcement of the fine provided for in this act are for any reason invalid, these provisions so far as they contravene the Constitution must fail. I am inclined to think per‐ sonally that it is within the power of the Legislature to provide that when the fine is paid into court that the same should be for the benefit of the wife or in a proper case for the benefit of the minor child or children. I am inclined to believe that the fine assessed against relator is subject to the control and disposition of the Legis‐ lature and they may make such direction and provision for its dis‐ position as it sees proper. This, as I understand, is the rule both at common law and in this State. Nor is it certain that provision can not be made by bond or recognizance if the payment of the fine as‐ sessed (none other) in installments and for security to be taken therefor by an instrument in the nature of a recognizance. However, I am clear that if for any or all of the reasons suggested above the provisions for the collection and payment of the fine should be de‐ clared to be unconstitutional, that it does not and can not in the slightest manner affect the validity of this act. To my mind it is demonstrably clear that we have a statute in which an offense is defined and in which a penalty is named. This portion of the act is complete and perfect in itself, and if the mere process by which the payment of such fine shall be provided for should be held to be in‐ valid and nugatory, it can not affect the result. It is the uniform rule that where a part of an act is valid and part invalid, if the valid provisions are separable, that the act may be sustained and the in‐ valid portion fail. Such is the rule laid down by Mr. Cooley in his work on Constitutional Limitations, pages 209-210-211: "It will sometimes be found that an Act of the Legislature is opposed in some of its provisions to the Constitution, while others, standing by them-

selves, would be unobjectionable. So the forms observed in passing it may be sufficient for some of the purposes sought to be accomplished by it, but insufficient for others. In any such case the portion which conflicts with the Constitution, or in regard to which the necessary conditions have not been observed, must be treated as a nullity. Whether the other parts of the statute must also be adjudged void because of the association must depend upon a consideration of the object of the law, and in what manner and to what extent the unconstitutional portion affects the remainder. A statute, it has been said, is judicially held to be unconstitutional, because it is not within the scope of legislative authority; it may either propose to accomplish something prohibited by the Constitution, or to accomplish some lawful, and even laudable object, by means repugnant to the Constitution of the United States or of the State. A statute may contain some such provisions, and yet the same act, having received the sanction of all branches of the Legislature, and being in the form of law, may contain other useful and salutary provisions, not obnoxious to any just constitutional exception. It would be inconsistent with all just principles of constitutional law to adjudge these enactments void because they are associated in the same act, but not connected with or dependent on others which are unconstitutional. Where, therefore, a part of a statute is unconstitutional, that fact does not authorize the courts to declare the remainder void also, unless all the provisions are connected in subject-matter, depending on each other, operating together for the same purpose, or otherwise so connected together in meaning, that it can not be presumed the Legislature would have passed the one without the other. The constitutional and unconstitutional provisions may even be contained in the same section, and yet be perfectly distinct and separable, so that the first may stand though the last fall. The point is not whether they are contained in the same section; for the distribution into sections is purely artificial; but whether they are essentially and inseparably connected in substance. If, when the unconstitutional portion is stricken out, that which remains is complete in itself, and capable of being executed in accordance with the apparent legislative intent, wholly independent of that which was rejected, it must be sustained." And such is the holding of this court. This rule will be recognized by every lawyer. Ought it to be applied, and can it in fairness be applied to this question? It is undeniable if my view is correct that the act defines an offense. It is undeniable that it fixes in definite and clear terms a penalty. If the act had stopped there it would not be questioned that it would be valid. All that follows is merely directory and has reference to the manner and means of enforcing the penalty imposed by law. If these regulations fail, the validity of the act is not affected because in the absence of such regulations other provisions of law are provided for the collection of fines and their enforcement. How can it be said that the

act would be valid if these matters of detail in reference to the collection of a fine were omitted and yet invalid because of their insertion. If they fail it is as if they had not been written in the act. If they had not been written in the act the court would apply the orderly processes which the law gives for the collection of the penalties. When they do fail the law will supply and apply the provision and the same result would ensue. In practically all new offenses created by our Legislature no provision is made for the enforcement of the penalties provided by law. None is required and if these provisions fail we have a perfect act and a law from which relator can not escape punishment because he may object merely to the methods of enforcing the penalties that are denounced by law. It is a well settled rule that we ought if possible to sustain this law and every law passed by the Legislature unless it is clearly unconstitutional. The main purpose of this law was to discourage wife and child abandonment. These are matters in which the State has an interest. It prevents mendicancy, prostitution and illiteracy, and the throwing upon the public burdens which husband and parent ought to bear. It is the undoubted purpose of the Legislature, in the interest of the helpless women and dependent children of this State, with a view of discouraging vicious and profligate husbands and fathers for abandoning their wives and offsprings, to make it an offense and thus deter and prevent such deplorable conditions, and if still committed, to visit the offender with appropriate punishment. The incidental fact that in their zeal the Legislature go beyond the constitutional limits imposed on them as to the mere regulation of the method of payment, and the beneficent intent in its payment, ought not to undo this much needed legislation—legislation, to borrow a phrase from my Brother Brooks, as beneficent as the angels ever smiled upon. I believe the law is valid and ought to be sustained, and in view of the importance of the question to the public and society at large, I have thus in some detail written out my views.