IN THE

# SUPREME COURT OF TENNESSEE

FOR THE

EASTERN DIVISION.

KNOXVILLE, SEPTEMBER TERM, 1917.

STATE *v.* EUGENE DIXON.

(*Knoxville.* September Term, 1917.)

1. **HUSBAND AND WIFE.** Nonsupport. Criminal prosecutions. Indictment.

An indictment, charging that defendant did "willfully and without good cause neglect or fail to provide for his wife according to his means, or leave her destitute or in danger of becoming a public charge," *held* to charge a misdemeanor under the direct provisions of Acts 1915, chapter 125. (*Post, p.* 198.)

Acts cited and construed: Acts 1915, ch. 125.

2. **HUSBAND AND WIFE.** Nonsupport. Statute. "Good cause."

Acts 1915, chapter 125, making it a misdemeanor for a husband to willfully and without good cause neglect or fail to provide for his wife according to his means, or leave her destitute or in danger of becoming a public charge, is not fatally uncertain in

that the words "without good cause" are not defined; such phrase meaning without cause sufficient in law to excuse the failure to provide. (*Post, pp.* 198, 199.)

3. **HUSBAND AND WIFE. Nonsupport. Statute.**

Acts 1915, chapter 125, denouncing as a misdemeanor nonsupport of a wife by her husband, does not apply to a husband who has no employment, nor property, unless he had intentionally dispossessed himself thereof. (*Post, pp.* 199-202.)

Cases cited and approved: State v. Dvoracek, 140 Iowa, 266; State v. Stout, 139 Iowa, 557; State v. Baker, 182 La., 801; Commonwealth v. Ham, 156 Mass., 485; Samuelson v. State, 116 Tenn., 475.

Cases cited and distinguished: State v. Williams, 136 Mo. App.. 304; Ex parte Smythe, 56, Tex. Cr. R., 375; United States v. Brewer, 139 U. S., 278.

4. **CONSTITUTIONAL LAW.** Departments of government. **Delegation of legislative power.**

Acts 1915, chapter 125, making it a misdemeanor for any husband to willfully and without good cause neglect or fail to provide for his wife according to his means, does not delegate to the courts and juries the power to determine what is good cause, in violation of Constitution article 2, section 2, prohibiting any person or persons belonging to one department of government from exercising any of the powers belonging to any other department. (*Post, pp.* 202, 203.)

Constitution cited and construed: Const. art. 2, sec. 2.

5. **CONSTITUTIONAL LAW.** Departments of Government. **Pardoning power.**

Acts 1915, chapter 125, section 5, providing that at any time during the confinement of a husband for nonsupport of his wife he may be relieved from imprisonment upon giving bond, does not violate Constitution article 3, section 6, conferring power on the Governor to grant reprieves and pardons. (*Post, pp.* 203, 204.)

Constitution cited and construed: Const. art. 3, sec. 6; Art. 11, sec. 17.

State v. Dixon.

6. **CONSTITUTIONAL LAW.** **Imprisonment for debt.** **Statutes.**

Acts 1915, chapter 125, making it a misdemeanor for a husband to neglect to support his wife without good cause, does not violate Constitution article 1, section 18, providing that the legislature shall pass no law authorizing imprisonment for debt in civil cases. (Post, p.—.)

Case cited and construed: State v. Latham, 136 Tenn., 30.

Constitution cited and construed: Sec. 18, art. 1.

### FROM HAMILTON.

Appeal from the Criminal Court of Hamilton County.—S. D. McREYNOLDS, Judge.

WM. H. SWIGGART, JR., Assistant Attorney-General, for the State.

SAM E. WHITAKER, for Dixon.

MR. JUSTICE BUCHANAN delivered the opinion of the Court.

Dixon was indicted for that he did "willfully and without good cause, neglect or fail to provide for his wife according to his means, or leave her destitute, or in danger of becoming a public charge."

Chapter 125, Acts of 1915, page 345, denounces such conduct by any husband as a misdemeanor.

By way of defense to this indictment a motion to quash was interposed. The trial court sustained the motion, and the State appealed.

The motion to quash makes the point that the indictment fails to state any offense. This is not well taken. The statute declares conduct by any husband such as is set out in the quotation, supra, to be a misdemeanor, and the indictment in the exact words of the statute charged the defendant with the commission of the offense.

It is next said that the words "without good cause" are not defined, and therefore that the act is fatally uncertain in meaning. We think, however, that no ambiguity exists. The meaning is, without a cause sufficient in law to excuse the failure to provide. Before the passage of this statute a husband was under a duty by the common law to provide for his wife the necessaries of life according to their station, etc. The welfare of the social order requires that the husband discharged this duty, and it is within the competency of the lawmaking department of the State to denounce the failure of the husband to discharge the duty in which the public is interested as a misdemeanor. The words "without good cause," as used in the statute, evidently qualify the word "willfully," and the words "neglect or fail," and we think make it clear that in any case where there is good cause or excuse for the failure to provide for the wife, even if such failure result in leaving

State v. Dixon.

her destitute or in danger of becoming a public charge, the husband is not guilty of a violation of the act.

Having arrived at the conclusion that the words "without good cause" mean without a cause sufficient in law to excuse the failure to provide, the act is freed from any charge of fatal uncertainty.

It is clear that the husband is only required to provide "according to his means." If these be employment and earning capacity thereunder, or if they be property real, personal, or mixed, the husband is bound to provide for his wife out of these means to the same extent as at common law, inasmuch as it is the common-law duty to provide on which the statute rests. But there is nothing in this act to indicate that its terms should be held to apply to a husband who has no employment, and no property of any character, unless it appear that he has dispossessed himself of such means with intent to place himself beyond the operation of the act. The words of the statute indicate that it was not intended to add another burden to the hard lot of a paupered husband, unless he pauperized himself with intent to defeat the operation of the act. The qualifying words employed in the terms of the act show that the mischief which the legislative department intended to prevent was the failure or neglect of a husband to provide for his wife where he was possessed of the means to make suitable provision for her.

Courts of other jurisdictions have reached the conclusion that the phrase "without good cause" in acts similar to ours did not render the act void for want of certainty in the following cases: *State* v. *Williams,* 136 Mo. App., 304, 116 S. W., 1128; *State* v. *Dvoracek,* 140 Iowa, 266, 118 N. W., 399; *State* v. *Stout,* 139 Iowa, 557, 117 N. W., 958; *State* v. *Baker,* 112 La., 801, 803, 36 South., 703; *Commonwealth* v. *Ham,* 156 Mass., 485, 487, 31 N. E., 639; *Ex parte Smythe,* 6 Tex. Cr. R., 375, 120 S. W., 200, 23 L. R. A. (N. S.), 854, 133 Am. St. Rep., 976, Ann. Cas., 1912B, 280.

"A statute cannot be held void for uncertainty if any reasonable and practical construction can be given to its language. Mere difficulty in ascertaining its meaning, or the fact that it is susceptible to different interpretations, will not render it nugatory. Doubts as to its proper construction will not justify us in disregarding it. It is the bounden duty of courts to endeavor, by every rule of construction, to ascertain the meaning of, and to give full force and effect to every enactment of the general assembly not obnoxious to constitutional prohibitions." Sutherland, Stat. Const. (Lewis) vol. 1, sec. 86.

In *State* v. *Dvoracek,* supra, it was said of the words "good cause," used in the statute there under consideration, that such words meant no more than sufficient cause, and that any cause would be "good which affords a legal excuse for not providing," etc.

It was also observed in that opinion that if defendant be "utterly without means" and unable to earn them, his neglect cannot well be willful, unless he purposely placed himself in that situation, and that "whether the omission is willful must be determined from the evidence adduced precisely as in any other case.". *In State* v. *Williams,* supra, the court said:

"The term 'good cause' means such a cause as will authorize a decree for divorce in favor of the husband as against the wife."

In *Ex parte Smythe,* supra, the court said:

"If the phrases 'without good cause' be held synonymous with the phrase 'lawful cause,' it could not be said to be unduly vague or uncertain."

The other authorities above cited take substantially the same view of the meaning of the phrase "good cause," or phrases of similar import, in the statutes respectively considered.

Defendant relies on the principle laid down in *United States* v. *Brewer,* 139 U. S., 278, 11 Sup. Ct., 538, 35 L. Ed., 190, as follows.

"Laws which create crime ought to be so explicit that all men subject to their penalties may know what acts it is their duty to avoid" and the opinion cites many cases to the same point. We have no quarrel with the principle, but we are of the opinion that, measured by it, the act in question is sufficiently certain in meaning. In one of our own cases, where the defendant was indicted under

,chapter 410, p. 872, Acts of 1905, it was insisted that the words "standard schedule rate" rendered the the statute fatally vague. The point was rejected on the ground that there was, at the time the act was passed, a legally established standard rate. *Samuelson* v. *State*, 116 Tenn. (8 Cates), 475, 95 S.W., 1012, 115 Am. St. Rep., 805. No more can be doubted that at the time of the passage of the act in question there existed, under our law, the correlative duties of husband and wife, each to the other.

A further insistence made is that the phrase "without good cause" leaves to the discretion of courts and juries the power to determine what is good cause within the meaning of the act, and that thus there is a delegation to courts and juries of legislative power in violation of section 2, article 2, of the State Constitution, which prohibits any person or persons belonging to one department of government from exercising any of the powers belonging to either of the other departments, except in cases by the Constitution permitted. The point is without merit. A proper construction of the words of the act, when there is no material conflict in the evidence, is a judicial question, and if there be conflict in the evidence, then it is for the court to charge the jury upon the law, and the jury to find the fact; in no event can it be said that the law of each case is made by either court or jury. For, as we have seen, part of the law was existent before the act was passed, to wit,

the correlative duties of husband and wife, and part of the law came into existence when the act was passed, to wit, the declaration that failure or neglect to discharge one of his legal duties to the wife, viz. that of providing for her according to his means, makes the husband guilty of a misdemeanor.

In view of all that has been said, it is our construction of the act that where a husband, without contrivance on his part to that end, is without means to provide for his wife, there is good cause for his failure or neglect so to do, and where a wife is guilty of such misconduct during the existence of the marriage relation as would constitute grounds for divorce at the suit of the husband, there is good cause for his failure to provide for her, and that, in either event, a good cause would exist in favor of the husband if indicted under the act.

It is urged that the act violates article 3, section 6 of the Constitution which confers power on the Governor to grant reprieves and pardons after conviction except in cases of impeachment.

This insistence is predicated on section 5 of the act, which reads:

"Be it further enacted, that any time during defendant's confinement, he may and shall be released from his term of imprisonment upon giving the bond as herein provided, or in the discretion of the court, upon his own recognizance as herein above provided."

The judgment authorized by section 4 of the act should have incorporated in it the condition imposed by section 5; but if such be not done, the statute imposes section 5 as a condition on, or limitation of, the power of the court, so that when, after the original judgment, the court allows the defendant the benefit of the condition embodied in section 5, the action of the court is not a new judgment, but a mere carrying out in part of the original judgment. We fail to see in this, or in any other view of the act, an invasion of the pardoning power of the Governor.

Another ground of the motion to quash was that the act was in violation of article 11, section 17, of the Constitution of the State of Tennessee; but this point is not pressed on the briefs, and is wholly without merit.

The final question made by the motion to quash is that the act violates section 18, article 1, of the Constitution of the State, which provides that the legislature shall pass no law authorizing imprisonment for debt in civil cases. The same point was made in the case of *State* v. *Sam Latham*, in an opinion for publication rendered at the September term, 1916, of this court; but the ruling there made was in favor of the constitutionality of the act. *State* v. *Sam Latham*, 136 Tenn., 30, 188 S. W., 534.

It results that the judgment of the criminal court of Hamilton county is reversed, and the cause is remanded for trial under the indictment.