McWHORTER et al. v. GIBSON.—84 S. W. (2d) 108.

Eastern Section.   April 13, 1935.

Petition for certiorari denied by Supreme Court, June 29, 1935.

Wilkerson & Wilkerson, of Chattanooga, and W. M. Beck, of Ft. Payne, Ala., and Edgar Watkins, Jr., of Atlanta, Ga., for plaintiffs in error.

Thach & Thach, of Chattanooga, and Scott & Dawson, of Fort Payne, Ala., for defendant in error.

AILOR, J. This is an action for damages for the death of J. B. Stout, minor son of plaintiff, alleged to have been caused by the negligent operation of a truck by defendant McWhorter, resulting in a collision between such truck and an automobile in which said J. B. Stout was riding. It was alleged in the declaration that plaintiff was the mother of said J. B. Stout, a minor about nineteen years of age; that the father of said J. B. Stout was dead; and that she, as the mother, had a right of action under the laws of the state of Alabama and especially under section 5695 of the Code of 1928 of Alabama which was in full force and effect at the time of said accident, and which provides:

"When the death of a minor child is caused by the wrongful act, or omission, or negligence of any person or persons, or corporation, his or their servants or agents, the father, or the mother, in cases mentioned in the preceding section; or if the father and mother are both dead, or if they decline to bring the action or fail to do so within six months from the death of the minor, the personal representative of such minor may sue, and in any case shall recover such damages as the jury may assess; but a suit by any one of them for the wrongful death of the minor shall be a bar to

another action, either under this section or under the succeeding section."

The suit was against W. L. McWhorter, as owner and driver of the motor vehicle alleged to have been negligently operated in such manner as to cause the death of said J. B. Stout, and also against Builders & Manufacturers Mutual Casualty Company, it being alleged in the declaration that said W. L. McWhorter had procured the issuance of an indemnity insurance policy, which policy provided for the payment of $5,000 for the death of or injury to any one person, and $10,000 for damages caused by any one accident or occurrence; that under the laws of Alabama and the terms and conditions of said policy, plaintiff was permitted to bring suit against the owner and operator of said automobile, and also against said insurance company, to recover damages resulting from the negligent operation of said automobile.

Defendant McWhorter interposed a plea to the declaration as filed, in which it was alleged that said defendant was a citizen and resident of DeKalb county, Ala., at the time the cause of action arose and at the time of the institution of the suit, and that the plaintiff was likewise a resident of the same county at the time the cause of action arose and at the time of the institution of the suit, and that the cause of action arose in said county; that the said J. B. Stout was, at the time of his injury and death, duly and lawfully married to one Bernice Peek Stout, and that said marriage was still subsisting at the time the cause of action arose; that said Bernice Peek Stout survived her said husband, and resided in De-Kalb county, Ala., and that she was then making demand upon said defendant for damages for the alleged wrongful death of her husband, who died intestate; that the said J. B. Stout was not at the time of his death a member of the family of plaintiff, and had not been for more than a year prior to his death; that he had not lived with the plaintiff for a considerable time prior to his death; and that deceased was not dependent upon, or under the care, custody, and control of the plaintiff, but that he was a married man and the head of a family, and not a member of the family of plaintiff.

It was further alleged in said plea that said accident occurred in Alabama, and that the laws of said state would govern and control the rights and liabilities of the parties; that under the laws of the state of Alabama the mother of deceased, the plaintiff, is not vested with the right to sue for damages for the alleged wrongful death of said J. B. Stout, and the statute laws of said state were specially relied upon as follows:

Code, section 5694: "A father, or in case of his death or desertion of his family, or his imprisonment for a term of two years or more under a conviction for crime, or his confinement in an insane

hospital, or if he has been declared of unsound mind, the mother may sue for an injury to a minor child, a member of the family."

Section 5695 (this section is not recopied as it appears on page 109 of this report in connection with statement of the contents of the declaration).

Section 5696: "A personal representative may maintain an action, and recover such damages as the jury may assess in a court of competent jurisdiction within the State of Alabama, and not elsewhere for the wrongful act, omission, or negligence of any person or persons, or corporation, his or their servants or agents, whereby the death of his testator or intestate was caused, if the testator or intestate could have maintained an action for such wrongful act, omission, or negligence, if it had not caused death. Such action shall not abate by the death of the defendant, but may be revived against his personal representatives; and may be maintained, though there has not been prosecution, or conviction, or acquittal of the defendant for the wrongful act, or omission, or negligence; and the damages recovered are not subject to the payment of the debts or liabilities of the testator or intestate, but must be distributed according to the statute of distributions. Such action must be brought within two years from and after the death of the testator or intestate."

Section 7374: "The personal estate of persons dying intestate as to such estate, after the payment of debts and charges against the estate, is to be distributed in the same manner as his real estate, and according to the same rules; except that the widow, if there are no children, is entitled to all the personal estate, or, if but one child, she is entitled to one-half; if more than one, and not more than four, children, to a child's part; and if more than four children, to one-fifth."

It was insisted that the right of recovery was in the administrator for the use and benefit of the widow of J. B. Stout and that the plaintiff had no right of action; but that if defendant should be mistaken in his interpretation of the laws of Alabama regulating the rights of the parties, and a proper interpretation thereof should vest the mother with the right to prosecute this suit, then said laws were so contrary to the established law and public policy of this state that same should not be enforced, and the suit should be dismissed. The plea was sworn to.

The defendant insurance company also filed a sworn plea in the form of a plea in abatement. It was denied that this defendant was subject to suit in Tennessee in the manner by which it was sought to be sued in this case, and relied specially upon section 8676 of the 1932 Code of Tennessee, as follows:

"Foreign corporations suable here, when.—Any corporation claiming existence under the laws of the United States or any other state,

or of any country foreign to the United States, or any business trust found doing business in this state, shall be subject to suit here to the same extent that corporations of this state are by the laws thereof liable to be sued, so far as relates to any transaction had, in whole or in part, within this state, or any cause of action arising here, but not otherwise.''

It specially pleaded its existence as a foreign corporation under the laws of the state of Illinois; that the cause of action sued on did not arise in Hamilton county, Tenn., but that the same arose and accrued in DeKalb county, Ala. And that this defendant was not subject to suit by service of process upon the secretary of state, as in the suit at bar, except in the county where the cause of action arose, or in the county where the party to be served resides, relying upon section 4126 of the 1932 Code of Tennessee as follows:

''The venue of all actions, suits or proceedings in case of service of process upon such designated agent, or, in lieu, upon the secretary of state, may be in the county in which the cause of action arose or accrued; or, in the county where the one to be served resides and the process is so served, except where the action is local in nature. In event of service on the secretary of state, he shall pursue the method prescribed by section 4124 et seq. In actions, suits or proceedings against foreign corporations otherwise maintaining an office or agent in the state, venue shall be as this Code provides.''

Upon motion of the plaintiff both of the foregoing pleas were stricken from the record, and ten days allowed for further pleas. Exceptions were preserved to this action of the court in striking said pleas. Thereafter defendants filed a joint plea, the defendant McWhorter a plea of not guilty, and Builders & Manufacturers Mutual Casualty Company that it did not contract and agree as charged. They likewise renewed and relied upon the same questions raised by the pleas in abatement. Plaintiff joined issues on these pleas, and filed replication to that portion of the plea challenging the jurisdiction of the Hamilton county circuit court. In this replication it was averred that service of process could not be had upon said insurance company in DeKalb county, Ala., for the reason that it had no office or agency in said county, and that it would have been necessary for her to go to Mobile county in order to obtain service upon said defendant, a distance of some 300 miles from Fort Payne, and that she had a legal right to institute said suit in Hamilton county.

The cause was submitted to the jury on the issues thus made up, and it returned a verdict of $3,400 against both of the defendants, of which amount $3,000 was assessed against the insurance company, and the additional amount of $400 on McWhorter alone. A

motion for new trial was made and overruled, and an appeal in error perfected to this court.

The facts are rather brief. On September 1, 1933, Burnett Williams, young driver of a grocery wagon in Fort Payne, Ala., borrowed a Ford coupé from a friend in the late afternoon after quitting work. About 8:30 p. m. he went to the theater looking for a friend, and there encountered the deceased and a Mrs. Burns coming out of the picture show. The three of them got into the car, Williams driving, Mrs. Burns in the middle, and the deceased on the right side. They drove in a northerly direction along the main street through the town a distance of about half a mile. The witness Williams testified that he was driving on his side of the road, on the right-hand side of the road; that he saw a car coming; that he could not tell what it was, but it looked just like a car, and the next thing he knew it bumped into them; that he was driving 20 to 25 miles per hour at the time of the collision; that he could only see the two headlights of the approaching car, and could not tell the size of it, but that it did not have any side lights on the body; that he did not know what happened from the time of the collision for some day or so thereafter. His left arm was torn off near the shoulder. The accident occurred about 9 o'clock at night. From about 6:30 to the time of the accident, the witness Williams had been driving around the town.

Mrs. Burns testified that after they got into the automobile they drove northward towards her home, but that when they arrived cars were passing and they drove on to turn around; that she saw the truck coming, saw two headlights; that they passed the cab of the truck, and that the bed caught the arm of Williams, the driver, and by that time they were turning over; that she was not caught by the overturned car, but does not know how she got out; she saw the truck coming a considerable distance away, and it appeared to be about the middle of the highway, and that the car she was riding in was on the right side of the road. Neither of these witnesses who participated in the wreck attempted to locate the relative positions of the truck and the automobile at the time of the collision other than to say the automobile was on the right-hand side of the road when the collision occurred. Mr. Evans, a policeman, investigated the accident a short time after the collision, and examined the tracks of the truck. He states that the left rear truck wheel was running near the center of the road at the time; that if anything it was on the west side of the center of the road, and we think that his testimony is the only dependable evidence in the record as to the relative location of the two vehicles at the time of the collision. The bed of the truck, according to defendant McWhorter, extended beyond the wheels from 2 to 2½ inches.

Defendant McWhorter and his wife and daughter and a Mr.

Rains were all riding in the truck at the time of the accident; they saw the automobile in which deceased was riding coming towards them; it was "fence rowing," as they expressed it, that is, it was running from one side of the street to the other; the lights were very dim on the Ford, and did not give much light. Defendant McWhorter testified that the street was about 30 feet in width at the point of the collision; that he pulled as far to the right as it was safe for him to drive, and that there was room for two cars to pass on the other side when the car in which deceased was riding collided with his truck; that he was driving around 25 miles at the time.

It appears that deceased was about nineteen years of age, and that he had married in February of 1933; that he had taken his wife to the home of his mother to live, and they had lived there together for something like three months; that they separated after living together for about three months, and soon thereafter, some time during the month of May, deceased went to Chattanooga and obtained work; that he would visit the home of his mother over the week-ends, but boarded in Chattanooga while working there, paying his board; that he had been at the home of his mother a portion of the week prior to his death; the father of deceased died when he was about two years of age, and his mother, the plaintiff, had remarried again within about two years thereafter.

The first question in order of sequence for our determination is the right of the plaintiff to institute and prosecute a suit for damages for the negligent killing of her minor son, who had contracted a valid and subsisting marriage. It is insisted on behalf of plaintiff that, by the statute laws of the state of Alabama, she is entitled to maintain the suit to the exclusion of any rights of the widow, acting through an administrator, while on the other hand it is just as strenuously insisted that the widow is the sole beneficiary under any recovery for the wrongful killing of her minor husband to the exclusion of the mother of said minor. Both the plaintiff and defendants rely upon the statute laws of Alabama, and they cite numerous authorities from that state in support of their contentions. However, it does not appear that the direct question of a conflict between the claims of a mother and a widow of a minor was involved in any of the cases cited. So that it is necessary for us to first pass upon this question before proceeding to a consideration of the issues on the merits of the case.

By section 5694 of the Code of Alabama it is provided that the father, or in case of his death the mother, may sue for damages resulting from the wrongful killing of a minor child, a member of the family. It is insisted on behalf of the plaintiff that the deceased was still a member of the family of the plaintiff; that his marriage did not change this status; and that his widow had no

rights in the matter. By section 5695 of same it is provided that when death results to a minor child from the wrongful act of a party, the father or mother, in the cases mentioned in the preceding section, may bring the action, and if they decline or fail to do so for a period of six months, the personal representative may institute such suit to recover damages, and that a suit by either shall be a bar to a further suit. By section 5696 of same it is provided that a personal representative may bring suit to recover damages for the wrongful death of his testator or intestate, if the testator or intestate could have maintained an action for such wrongful act; not resulting in death. And it is further provided in said section that any recovery resulting from such suit by the personal representative shall be distributed according to the statute of distributions. By section 7374 of the same Code it is provided that the personal estate of a person dying intestate shall go to his widow, if there be no children.

An infant may maintain an action for personal injuries in this state, and there being no showing to the contrary, it will be presumed that the same rule prevailed in Alabama. It is true that an infant sues by next friend, but the fact that the parent may maintain an action for loss of services of the child, etc., does not impair the right of action of the infant. Shannon's Code, section 4503.

So that when construed together with the Alabama Code, section 5696, it will be concluded that the personal representative of deceased, Stout, so far as this suit is concerned, is presumed to be empowered to prosecute a suit for damages resulting in his death, and the fact that he was an infant would not alter this situation. In the absence of a showing to the contrary, it will be presumed that the laws of Alabama with regard to the right of an infant to maintain suit for personal injuries are the same as the laws of this state. Star Clothing Mfg. Co. v. Nordeman, 118 Tenn., 384, 100 S. W., 93.

It will be noticed that the right of the father, and in case of his death the mother, to bring suit for damages resulting in the wrongful death of a minor is dependent upon such minor being a member of the family of such person proposing to maintain such suit. It is earnestly insisted that J. B. Stout was a member of the family of Rosa Gibson at the time of his death, regardless of the fact that he had entered into a binding marriage which was still subsisting at the time of his death. In this connection it is insisted that he was not living with his wife at the time of his death, and that she had prior to that time instituted divorce proceedings against him. However, these circumstances do not alter the legal effect of the marriage of deceased. Did he cease to be a member of his mother's family as a result of his marriage?

■■ There is some conflict in the holdings of this question, but we think that the statement as made in Ruling Case Law is a clear statement of the law. "Though it has been held that marriage alone does not emancipate an infant, the current of authority is to the effect that, since the law permits the marriage of minors, parental rights must necessarily yield to the new obligations and rights arising from the marital relation. The married child, whether son or daughter, becomes a member of a new family, and the claims of the former family become subordinate. If a minor son is married, the duty of support which he owes to his wife and possible children takes precedence of his duty to labor for his father, and the father's right ceases. Whether the father can claim any surplus of his earnings above the requirements of the wife's support seems to be still an unsettled question. A married daughter, also, owes her companionship and assistance to her husband rather than to her father; and the father's right to her custody, control and services must yield to that of her husband. It has been held that this results even if the girl were below the statutory age of marriage, since the marriage of such a girl is valid until avoided by a proper action. But emancipation by marriage, like that by the father's act, does not remove the disabilities of infancy, or enable the married minor to make general contracts. In a few cases it has been held that marriage effects an emancipation only when it is entered into with the father's consent; but the better and more numerous cases deny this distinction." 20 R. C. L., pages 612, 613.

In this state it is the duty of a husband to support his wife, and it is a misdemeanor for him to willfully and without good cause neglect or fail to provide for her according to his means. Pub. Acts 1915, chap. 125; State v. Dixon, 138 Tenn., 195, 196 S. W., 486.

In the absence of a showing to the contrary, it is presumed that the laws of Alabama are similar to the above rule. And since this is true, it must be, presumed that the deceased was obligated to support his wife to the extent of being guilty of a misdemeanor by willful failure to do so without good cause. He was under no such obligation to his mother, who brings this suit. By reason of his wrongful death, as insisted upon, his widow was deprived of the privilege which she had of enforcing her right to maintenance. Only one right remained, and that an action for damages for the wrongful death of said minor husband. Should the widow for whose support and maintenance the deceased was obligated be the beneficiary of this right, or should the mother who had no claims upon the deceased after his marriage? And in this connection it must be borne in mind that this is one angle of a fight, between the mother and the widow of J. B. Stout, deceased. The widow is not a party to the suit, but she is a witness for the defendants in their

attempt to defeat the action. And she testifies that while she and J. B. Stout had not been living together for a short time, they were planning to reunite on the following Monday. But this fact does not change the legal status of J. B. Stout and the plaintiff in this case; he was not a member of her family at the time of his death, and we think it necessary to conclude that she was not authorized to institute and maintain this suit. She seeks to maintain a purely statutory action, and she does not bring herself within the provisions of the statute. The insistence made by plaintiff is so contrary to the well-recognized rules regulating the relationship between husband and wife that it would have to be clear and unmistakable in terms before we would be disposed to give effect to such an interpretation. The statute insisted upon does not meet this requirement of clarity of meaning, since it provides that the minor shall be a member of the family of the mother before she falls within the classification of persons privileged to bring the suit for his wrongful death. On the contrary, the right of the personal representative to institute the suit seems to be unquestionable.

It should be observed that there are numerous other questions raised by the assignment of errors in this case. It is insisted that the plaintiff and defendant W. L. McWhorter and all of the witnesses are residents of DeKalb county, Ala., where suit could have been instituted in a court of general jurisdiction; that the defendant insurance company had no agency in Hamilton county, Tenn.; and that it was not subject to suit in said county by the plaintiff by service on the secretary of state of Tennessee. In pretermitting any consideration of these and other questions raised, we do not presume to treat them lightly, but having decided that the plaintiff is not entitled to maintain this suit, any extended consideration of these questions would be unnecessary. And for this reason, we do not pass upon any of these questions.

But for the reasons above set out, we conclude that the plaintiff is not entitled to maintain this suit. The fifth assignment of error is sustained, and the judgment of the lower court reversed and the suit dismissed.

Portrum and McAmis, JJ., concur.